## Wilson's Estate.

Argued May 15, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*J. R. Haughney*, for appellant.—It is neither "lapse of time" nor "failure to elect" which imperil the rights of interested parties. It is always the (a) declarations (Cox v. Rogers, 77 Pa. 160) ; (b) acts (Anderson's App., 36 Pa. 476) ; (c) deeds (Preston v. Jones, 9 Pa. 456) ; (d) conduct of the spouse (Boileau's Est., 201 Pa. 493) ; (e) the receipt of the gift (Bradford v. Kents, 43 Pa. 474) ; (f) possession or such exercise of dominion over the devise or bequest, amounting to an acceptance that misled others (Zimmerman v. Lebo, 151 Pa. 345). In fine, it is an election in pais either to take the gift or an election in pais to repudiate the gift, that makes it possible for other rights to intervene.

We think we made a valid election under the act as well as in pais: but if we did not, and if the present action is not an election, then we will make one as provided by law.

If no election has been made, Mrs. Wilson may now elect: Powell's Est., 225 Pa. 518.

*L. E. Torry*, for appellee.—The requirements of the act of assembly upon which appellant's petition was based are mandatory: Beck's Est., 265 Pa. 51; Gwynn's Est., 239 Pa. 238.

The appellant having failed to follow the provisions of the Act of 1911 in the service of the notice of her

election can not, in 1928, twelve years after the death of her husband, file her election anew, and be entitled to the same rights under the statute as she would have been entitled to receive had her election of 1916 been properly served: Powell's Est., 225 Pa. 518.

OPINION BY MR. JUSTICE FRAZER, July 1, 1929:

William Wilson died April 9, 1916, leaving a will in which he devised to his daughter, Katherine Watson, the house and lot then occupied by testator, and gave the residue of his real and personal estate to his wife, Catherine Wilson, for life, remainder to the children of his daughter, Katherine Watson, in equal shares. On November 21, 1916, the widow executed an election to take against the will of her husband and demanded that an appraisement be made and property to the extent of $5,000 set aside as provided by the Act of April 1, 1909, P. L. 87. Notwithstanding this paper was acknowledged and recorded the same day in the office of the recorder of deeds, it is conceded that no notice of it was given the executor until June 5, 1928, at which time a petition was filed by Catherine Wilson, setting forth that William Wilson died without issue, averring that her election to take against the will was duly made and recorded, that she was entitled to the sum of $5,000 in addition to the widow's exemption of $300, as well as to one-half of the remaining real and personal estate, and asking that appraisers be appointed to set aside her allotment and exemption. Attached to the petition was a copy of the original election to take against the will, also a paper entitled "Widow's Demand," wherein she elected to retain out of the estate of her deceased husband, real estate to the value of $5,000, under the Act of 1909, requesting that an appraisement be made according to law, and also requesting an appraisement of real estate to the value of $300, covering her exemption. The answer to the petition averred that no notice of the election of the widow to take against the will of her husband

was served on deponent as executor and that it was now too late for petitioner to make such election, as the rights of others had intervened, and averred further that decedent had, in fact, left a daughter who was interested under the will of her father, and she had children also interested under the will, and that they had not been made parties to the action.

At the hearing, Mrs. Wilson was called as a witness and testified, under objection, that she and decedent had no children and that Katherine Watson referred to in the will was a child whom they had taken from an orphan asylum when quite young, but had never actually adopted. Mrs. Wilson also testified that, from the time of her husband's death, she managed all the property left by him, continued to live in the house devised to Katherine Watson and received the entire income from the remainder of the estate except a house occupied by her daughter, from which she received no income since its occupancy by the former. During this time, a period of nearly twelve years, she took no action towards having an appraisement made and property set aside to her under the election which she recorded in 1916.

The evidence concerning the daughter depended entirely upon the testimony of the surviving widow. Under the rule stated in Munson v. Crookston, 219 Pa. 419, 421, and Phillips's Est., 271 Pa. 129, 132, she was incompetent to testify under the exception in section 5, clause (e) of the Act of May 23, 1887, P. L. 158, because, though her claim is by devolution, the daughter and grandchildren claim under the will, which is by purchase. Aside from this question, however, the widow failed to comply with the requirements of the Act of April 21, 1911, P. L. 79, requiring an election to take under or against the will of a decedent to be manifested by an election in writing duly acknowledged and "delivered to the executor or administrator of the estate of such decedent." This election is then to be recorded in the office for the recording of deeds and thereafter in the office of the

register of wills.  Only part of these requirements were complied with in the present case.  The election was acknowledged and recorded in the office of the recorder of deeds, but not delivered to the executor and it is conceded the latter was not given notice of the election until the petition in this case was presented to the court below nearly twelve years later.  Neither was it filed in the office of the register of wills.  The purpose of the Act of 1911 was to provide for the security of titles to real estate of a decedent by making the recording of the election the equivalent of a decree of court under the earlier acts, and thus promote certainty in the settlement of estates:  Beck's Estate, 265 Pa. 51, 54, 55;  Bailey's Estate, 285 Pa. 408, 412.  In the former case, a widow filed with the register of wills an election to take under her husband's will but failed to either acknowledge or serve it on the executor.  It was there held that such election was ineffectual; that the requirements as to execution, asknowledgment and delivery are mandatory, and that the "language of the statute is plain and its meaning emphasized by expressly excluding the delinquent party from all share in the estate until the election has been made as therein required.  The manifest intent was to promote certainty in the settlement of estates."

Under the above decisions the election in this case made in 1916 was a nullity because not delivered to the executor and filed in the orphans' court.  In the meantime the widow had proceeded to accept the benefits of the will, took possession of the real estate, and collected the rents therefrom for a period of twelve years before the present petition and election to take against the will was filed.  The rights of other beneficiaries under the will have in the meantime intervened.

The Act of 1911 contained no express provision as to the time within which an election must be made.  While this was changed by the Wills Act of June 7, 1917, P. L. 403, which requires an election to be made within two years, and provides that failure to do so will be deemed

an election to take under the will, that act, by its express provision, does not apply to wills of persons who died previous to its effective date. The question of laches in the present case must accordingly be determined on equitable principles. In Beck's Estate, supra, a delay of 15 months in making an election was held insufficient to bar the right, while, on the other hand, a delay of three and one-half years was held to be "gross laches on the part of the widow in exercising her right of election to take the benefit of her exemption, and operates as conclusive proof of a waiver of her right" (Kern's App., 120 Pa. 523), and seven years (Burk v. Gleason, 46 Pa. 297) were held to be laches under the earlier statutes. Here the widow, by failing to notify the executor of her intention to take against the will, and at the same time actually accepting benefits under its provisions, was placed substantially in the position of taking under the will and against it at one and the same time; this the law will not permit her to do.

Under the circumstances, the widow was clearly guilty of laches in the present case, and is bound by her implied election in accepting the benefits under the will during a period of nearly twelve years.

The judgment is affirmed.