610 A.2d 958

### In re ESTATE OF Clarence W. REIFSNEIDER, Deceased.

### Appeal of Carol I. SAUL and Sharen Greth, attorneys-in-fact for Audrey E. Reifsneider.

Supreme Court of Pennsylvania.

Argued Jan. 17, 1991.

Decided May 29, 1992.

20

Jeffrey C. Karver, Boyertown, for appellant.

J. Brooke Aker, Norristown, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

ZAPPALA, Justice.

Audrey E. Shankweiler and Clarence W. Reifsneider were married on August 13, 1977. Mr. Reifsneider died on October 22, 1987, and his will was admitted to probate on November 5, 1987. Carol I. Saul and Sharen Greth, Mrs. Reifsneider's daughters, as attorneys-in-fact under a durable power of attorney executed by their mother on April 28, 1986, filed a notice of election to take against the will on April 20, 1988. On May 17, 1988, they filed a Petition to Approve Filing by Attorneys-in-fact of Election to Take Against Will, citing 20 Pa.C.S. § 5603(d).

Thereafter, the Estate filed a Petition to Strike the election to take against the will, asserting that the right of election was barred by an antenuptial agreement and that the election failed to conform to relevant sections of the Probate, Estates and Fiduciaries Code. The Estate also filed an Answer in response to the Petition to Approve the filing of the election, in which it was alleged that the power of attorney had been granted at a time when Audrey Reifsneider was incompetent, and that it did not authorize the filing of an election against will in the language required by the Code. In New Matter, the Estate also asserted that the petition for court approval was untimely, having been filed more than six months after the date of probate.

The daughters filed further responsive pleadings asserting that the antenuptial agreement was invalid, denying that their mother was incompetent at the time the power of attorney was executed, and arguing that the court could authorize, nunc pro tunc, an election filed within six months of probate although lacking court approval. Following argument, the Court of Common Pleas of Montgomery County granted judgment on the pleadings, dismissing the election as not being timely filed

and as not authorized by the power of attorney under which the election was filed. Superior Court affirmed, holding that the language of the power of attorney was not sufficiently specific to conform to 20 Pa.C.S. § 5602 and grant the attorneys-in-fact the power to claim an elective share of the estate, 386 Pa.Superior Ct. 94, 562 A.2d 370. Because of this holding, the court did not address the question of the timeliness of the election. We granted allocatur to examine this case of first impression regarding the interpretation of powers of attorney under Act 1982–26.

Prior to 1974, the law regarding powers of attorney was based entirely on the common law of agency. It has been a fundamental principle that powers of attorney are strictly construed and the grant of special powers is not to be enlarged unless this is clearly intended. *Schenker v. Indemnity Insurance Company of North America,* 340 Pa. 81, 16 A.2d 304 (1940); *Campbell v. Foster Home Association,* 163 Pa. 609, 30 A. 222 (1894). Nevertheless, it has also been held that "the rule of strict construction will not be allowed to defeat the very purpose of the agency," and "[w]here the agent has authority to exercise discretion his exercise thereof will bind the principal." *Cardon's Estate,* 278 Pa. 153, 156–57, 122 A. 234, 235 (1923). See also *Nuzum v. Spriggs,* 357 Pa. 531, 55 A.2d 402 (1947).

In this context, our Court had the opportunity to examine the validity of an election to take against the will signed by an attorney-in-fact on behalf of a widow. *Celenza's Estate,* 308 Pa. 186, 193, 162 A. 456 (1932). After holding that there was no reason why one could not "delegate to an attorney-in-fact the signing of the paper declaring her election" to take under or against a will, we examined the language of the power of attorney itself and held that under the powers given therein, the attorney-in-fact could validly sign the election on the widow's behalf. Although the language did not specifically authorize the signing of an election, it did authorize the attorney-in-fact to act for the widow in connection with her husband's estate in the following language:

in the name of and as the representative of her the said constituent ... that he institutes and continues to final termination all the opportune and necessary acts required by law for the liquidation and disposition of the inheritance of her husband ... *intervening where necessary in matters* of the inheritance and incidentals thereof, ... to appear before all competent authorities, with writings ... and justifiable acts ... sign all manner of writings, documents and instruments, ... oppose, or recognize, heirs, ... further the reclaiming of real or personal property of whatever nature they may be, and sign all species of writing ... [,and] do everything which he considers necessary for the better carrying out of the power conferred upon him.

*Id.,* 308 Pa. at 193, 162 A. at 458.

The first statute treating the subject of powers of attorney was Section 2 of Act 295 of 1974. That Act amended Title 20 of the Pennsylvania Consolidated Statutes by adding Section 5601—"When power of attorney not affected by disability" and Section 5602—"Other powers of attorney not revoked until notice of death or disability". Section 5601 allowed for the creation of a durable power of attorney, modifying the common law rule that the disability of the principal served to revoke the agency, by providing that

Whenever a principal appoints another his attorney in fact or agent by a power of attorney in writing and the writing contains the words "this power of attorney shall not be affected by disability of the principal," or words showing the intent of the principal that the authority conferred shall be exercisable notwithstanding his disability, the authority of the attorney in fact or agent shall be exercisable by him as provided in the power notwithstanding later disability or incapacity of the principal at law or later uncertainty as to whether the principal is dead or alive....

Section 5602 further modified the common law rule regarding revocation upon disability or death by providing that

The death, disability, or incompetence of any principal who has executed a power of attorney in writing, shall not revoke or terminate the agency as to the attorney in fact,

agent or other person who, without actual knowledge of the death, disability, or incompetence of the principal, acts in good faith in reliance upon the power of attorney or agency. . . .

These sections were repealed with the adoption of Act 26 of 1982 and replaced by language taken from the Uniform Durable Power of Attorney Act. See 20 Pa.C.S. §§ 5604–5606.

At the same time, the General Assembly enacted new provisions relating to the grant of certain specific powers to attorneys-in-fact. See 20 Pa.C.S. §§ 5601–5603. Section 5601 now provides that

In addition to all other powers that may be delegated to an attorney-in-fact, any or all of the powers referred to in section 5602(a) (relating to form of power of attorney) may lawfully be granted in writing and, unless the power of attorney expressly directs to the contrary, shall be construed in accordance with the provisions of this chapter.

Section 5602, titled "Form of power of attorney", states in subsection (a), titled "Specification of powers", that

A principal may, by inclusion of the language quoted in any of the following paragraphs or by inclusion of language showing a similar intent on the part of the principal, empower his attorney-in-fact to do any or all of the following, each of which is defined in section 5603 (relating to implementation of power of attorney)

This statement is followed by nine items, one of which is "To claim an elective share of the estate of my deceased spouse." 20 Pa.C.S. § 5602(a)(4). As indicated, each of these items is further defined in section 5603.

At issue in this case is whether a principal wishing to grant one of the powers referred to in section 5602(a) must explicitly identify the power using specific language either identical or similar to the statutory language. Put another way, does the statute prevent courts from giving effect to general language, which would otherwise be considered to encompass a power identified in section 5602(a), because the language fails to explicitly identify the power?

Superior Court considered the statute as "fortif[ying] the previously described judicial principles" that powers of attorney are to be strictly construed but not so strictly as to impede the purpose for which the agency was created. In this context, the court concluded that

> the statute maintains that to empower an attorney-in-fact with the ability to perform certain functions listed therein, the power-of-attorney must include the specific language provided in the statute or language encompassing a similar intent. For language to constitute a similar intent, it must specifically refer to the function in question, but need not contain the exact language provided by the statute. As such, general language will not serve to empower an attorney-in-fact with the tools needed to perform a specific function listed in § 5602.

This conclusion, however, is in fact in marked contrast to the common law principles, according to which general language *can* serve to grant specific powers, and we find no basis to believe that the legislature intended to accomplish such a drastic change in the law.

▮ On its face, the language of this statute does not suggest that its provisions are to be restrictive or exclusive. Indeed, the statute contains several phrases supporting the contrary view. The general provision, section 5601, begins with the acknowledgement that the listed powers, which may lawfully be delegated in writing, are "[i]n addition to all other powers that may be delegated to an attorney-in-fact". It further states that the grant of any of the listed powers shall be construed according to section 5603 "unless the power of attorney expressly directs to the contrary". From this we conclude that the statute does not limit the subjects that may properly be addressed by powers of attorney, nor does it confine the way such powers may be defined. Likewise, the prefatory paragraph of section 5602(a) does not fix an invariable form for powers of attorney. Instead, it establishes that any or all of the powers listed may be delegated "by inclusion of the language quoted ... *or by inclusion of other language showing a similar intent*" (emphasis added).

As indicated, Superior Court adopted a narrow construction of this latter phrase, holding that to show a similar intent any other language must specifically refer to the function in question. The court reasoned that the legislature's purpose in enacting this section was "to provide courts with a more effective and efficient means through which to discover a decedent's [sic] intent." 386 Pa.Super. at 99, 562 A.2d at 372. Applying the rule of statutory construction that the legislature is presumed not to have intended a useless act, the court concluded that "[i]f we were to determine that specific language was not needed to authorize an attorney-in-fact to perform those functions as described in § 5602, we would be ignoring the existence of the statute." *Id.*

Without denying the validity of the stated rule of construction, we disagree with this application of it. First, we do not think it necessary for the legislature to alter the law when it chooses to enter a field theretofore occupied by the common law. The reduction to statutory law of precepts already established in case law is in itself a legitimate legislative purpose. Second, the statute can be given meaningful application without resorting to the restrictive interpretation of the court below. Simply put, general language *can* "show a similar intent on the part of the principal" to empower the attorney-in-fact to do one or more of the listed things if the general language, according to its common usage, would be understood as encompassing such power or powers. Often, the very purpose of using broad language is to avoid the limiting effects of specific language, to address all aspects of a class of activity without the need to anticipate and identify each individually. And when an attorney-in-fact performs one of the activities listed in § 5602(a) under authority of general language, section 5603 provides the definitions and limitations that circumscribe his activity.

■ Examination of the power of attorney at issue in this case leaves no doubt that the activity in question—the claiming of an elective share of the estate of the principal's deceased spouse—is within the class of activities that the attorney-in-fact was authorized to perform. Paragraph 7 autho-

rizes the attorneys-in-fact *"[t]o commence,* prosecute, discontinue and defend all actions or other *legal proceedings* touching my estate or any part whatsoever, or *touching any matter in which I* or my estate *may be in any way concerned,* . . . as he/she in his/her sole discretion shall deem best. . . ." R. 10. (Emphasis added). Paragraph 10 empowers them "[i]n general, to do all other acts, deeds, matters and things whatsoever in or about my estate, property and affairs and things herein, either particularly or generally described, as fully and effectually to all intents and purposes as I could in my own proper person. . . ." R. 11. And Paragraph 12 states even more broadly that the attorneys-in-fact "[i]n addition to the powers and discretion herein specifically given and conferred upon him/her and notwithstanding any usage or custom to the contrary, to have the full power, right and authority to do, perform and cause to be done and performed all such acts, deeds, matters and things in connection with my property and estate as he/she in his/her sole discretion, shall deem reasonable, necessary and proper, as fully, effectually and absolutely as if he/she were the absolute owner and possessor thereof." R. 11–12.

As noted above, the actions of an attorney-in-fact performing one of the functions listed in section 5602(a) are circumscribed by the statutory requirements of section 5603. Thus when an attorney-in-fact elects to take against the will of the principal's deceased spouse, "the election shall be made only upon the approval of the court having jurisdiction of the principal's estate in accordance with section 2206 (relating to right of election personal to surviving spouse) in the case of a principal who has been adjudicated an incompetent, or upon approval of the court having jurisdiction of the deceased spouse's estate in the case of a principal who has not been adjudicated an incompetent." 20 Pa.C.S. § 5603(d).

It was pursuant to this section that the daughters, having first filed a Notice of Election to Take Against Will, later filed a Petition to Approve Filing by Attorneys-in-fact of Election to Take Against Will. Common Pleas Court treated the latter pleading as an attempt to "cure the error" of having filed the

election without first having obtained court approval. Considering court approval to be a prerequisite to a valid election by an attorney-in-fact under section 5603(d), the court found the election as originally filed to be inadequate. And since the petition for court approval was not filed until after the expiration of the six month limitation period, the court determined that no valid election had been filed within the appropriate time frame, resulting in a waiver of the right of election.

The appellants argue that the statute imposes no specific time frame for obtaining court approval, requiring only that the election be filed within six months of death or probate, 20 Pa.C.S. § 2210.[1] In this, they attempt to draw a distinction between *filing* an election and *exercising* or *making* an election. According to this argument, the filing of the election was timely although the election would not in fact be exercised or made until the court had found it advisable and approved it.

In determining whether an attorney-in-fact must obtain court approval prior to filing an election to take an elective share, we must first examine the purpose of the legislation that requires the filing of the election. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921. In *Celenza's Estate*, supra, we stated that,

> The main purpose of the legislation requiring the filing of an election to take under or against a will is to give accurate information to the executor of the purpose of the husband and wife, so that a proper adjustment of the assets can be made.

308 Pa. at 192, 162 A. at 458. "The manifest intent [of the act] was to promote certainty in the settlement of estates." *Wilson's Estate*, 297 Pa. 348, 352, 147 A. 70, 71 (1929).

---

1. It is undisputed that the "time requirement is mandatory and cannot be extended except upon proof that the surviving spouse, by actual fraud, has been induced or misled to delay the election. ... 'Courts have no power to extend the ... statutory limitation.'" *Faller Estate*, 407 Pa. 73, 77, 180 A.2d 33, 35 (1962) (internal citations omitted). The legislature has, however, granted the courts specific authority to extend the time where the surviving spouse makes application for such an extension within the time limit, 20 Pa.C.S. § 2210(b).

The legislative requirement that the surviving spouse file such an election is essentially a notice provision to assure that the executor or administrator properly disposes of the assets of the estate. The purpose of filing the election is no different when the election is made by the surviving spouse or an attorney-in-fact on behalf of a surviving spouse. The inquiry then is whether § 5603(d) was intended to require that an attorney-in-fact obtain court approval before giving notice to the executor.

There is no statutory requirement that a petition seeking court approval be filed within a six-month period. The appellee nevertheless contends that § 5603(d) should be construed to require an attorney-in-fact to obtain court approval prior to the expiration of the six-month statutory period of limitation for election. The filing of written notice to elect to take against the will by an attorney-in-fact would be a redundant act, however, when an executor has received notice previously that a petition for court approval of the filing of the written notice has been filed. Not only would such an interpretation render the act of filing the election meaningless, it would impede the ability of the attorney-in-fact to exercise his authority under the power of attorney.

We do not interpret § 5603(d) as requiring court approval merely to give notice to an executor. Section 5603(d) was not intended to limit the authority of an attorney-in-fact under a power of attorney; rather, it was intended to ascertain the existence of his authority. The intent of the legislature was not to establish a pro forma requirement that the attorney-in-fact obtain leave of court to file a written notice of election. The purpose of the provision is to ensure that the attorney-in-fact is authorized under a valid power of attorney to make the election on behalf of the principal.

In this case, the action of the attorneys-in-fact in filing the notice of election to take against the will on April 20, 1988, was timely. Because the trial court dismissed the election as not being timely filed, the appellees' challenges to the election to take against the will based upon the existence of the antenuptial agreement, and whether the power of attorney was grant-

ed when Mrs. Reifsneider was incompetent, were not addressed.

The order of the Superior Court is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.

NIX, C.J., files a dissenting opinion.

NIX, Chief Justice, dissenting.

Powers of attorney are strictly construed and the grant of special powers is not to be enlarged unless this is clearly intended. *Fierst v. Commonwealth Land Title Insurance Company,* 499 Pa. 68, 451 A.2d 674 (1982); *Nuzum v. Spriggs,* 357 Pa. 531, 55 A.2d 402 (1947); *Schenker v. Indemnity Insurance Company of North America,* 340 Pa. 81, 16 A.2d 304 (1940). It has further been held that the rule of strict construction will not operate to defeat the purpose of the agency. *Nuzum v. Spriggs, supra.* In this context, the majority interprets 20 Pa.C.S. § 5602(a) as allowing a principal to grant one of the powers listed in section 5602(a) to an attorney-in-fact by use of general language. I disagree.

In pertinent part, section 5602, titled "Form of power of attorney", provides:

(a) Specification of powers—A principal may, by inclusion of the language quoted in any of the following paragraphs or by inclusion of other language showing a similar intent on the part of the principal, empower his attorney-in-fact to do any or all of the following, each of which is defined in section 5603 (relating to implementation of power of attorney):

\*　　\*　　\*　　\*　　\*　　\*

(4) "To claim an elective share of the estate my deceased spouse."

20 Pa.C.S. § 5602.

The statute requires that a principal use specific language or "other language showing a *similar* intent" to give the attorney-in-fact the power to perform a certain act. I believe that in order for language to qualify as "showing a *similar* intent,"

a specific reference to the power to be exercised must exist although the exact statutory language is not necessary.

In the instant case, Appellant did not use either the specific language of the statute or other language showing a similar intent. At best, the power of attorney herein was a general power of attorney. The general language used was insufficient to empower the attorneys-in-fact to claim an elective share of the estate of the deceased spouse.

Accordingly, I dissent.