652 A.2d 912

**Drucilla E. TAYLOR, Executrix of the Last Will and Testament of George R. Hixon,**

v.

**Lois E. VERNON, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1994.

Filed Jan. 5, 1995.

David K. Fonner, Somerset, for appellant.

William R. Nalitz, Waynesburg, for appellee.

Before ROWLEY, President Judge, and HUDOCK and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the final decree entered in the Court of Common Pleas of Greene County, dated May 5, 1994,[1] after the trial court ordered the defendant/appellant to reconvey certain property to the estate of her deceased father. We reverse.

The facts of this case are not in dispute. Decedent, George R. Hixon, had four children, including appellant, Lois Vernon and appellee, Drucilla Taylor. The decedent executed a will

---

1. In her brief, appellant characterizes the final order in this case as the order which disposed of her post-trial motions. Generally in an action at equity, an appeal may only be taken from entry of the decree nisi entered as a final decree. *See* Pa.R.Civ.P. Rule 227.4(1)(c). The trial judge in the instant case made the following order:

AND NOW, this 7th day of March, 1994, it is ORDERED and DIRECTED that the Court's Order of February 17, 1994, is in the nature of a decree nisi. The Defendant having filed exceptions to that Order, it is not a final, appealable order until such time as this Court enters an appropriate order disposing of those exceptions.

Order of March 7, 1994. Accordingly, we shall deem this appeal from the entry of the decree nisi, which was final on May 5, 1994, despite appellant's characterization of the appeal as one from the order denying post-trial motions.

on November 9, 1989 which named Taylor as the sole residual beneficiary and executrix of the estate.[2] The decedent specifically disavowed his three other children, including appellant, Lois Vernon.

On March 25, 1992, the decedent executed a power of attorney naming Taylor as his attorney-in-fact. He revoked the power of attorney approximately one month later.

On May 5, 1992, the decedent requested his attorney, David Hook, to prepare a power of attorney appointing appellant as his attorney-in-fact. On that same date, he directed Hook to prepare a deed transferring the property he held in his name at R.D. # 1, Jefferson, Pennsylvania, to himself and appellant as joint tenants with right of survivorship. On May 26, 1992, the decedent executed the power of attorney which named appellant as the attorney-in-fact. The writing contains the following pertinent language:

> KNOW ALL MEN BY THESE PRESENTS, that I, GEORGE R. HIXON, residing at R.D. # 1, Jefferson, Pennsylvania, do hereby nominate, constitute, and appoint Lois E. Vernon, residing at R.D. # 1, Jefferson, Pennsylvania, my true and lawful attorney-in-fact, for me and in my name, place and stead, and for my use and benefit:
>
>   *   *   *   *   *   *
>
> For me and in my name, to make, seal, and deliver, bargain, contract, agree for, purchase, receive, and take lands, tenements, hereditaments, and accept the possession of all lands, and all deeds and other assurances, in the law therefor, and to lease, let, demise, bargain, sell, remise, release, convey, mortgage, and hypothecate lands, tenements, and hereditaments upon such terms and conditions and under such covenants as she shall think fit;
>
>   *   *   *   *   *   *
>
> GIVING AND GRANTING unto my said attorney-in fact full power and authority to do and perform every act

2. Taylor's status as sole beneficiary was contingent on the decedent's wife having predeceased him. Mrs. Hixon did, in fact, die before Mr. Hixon.

necessary, requisite, or proper to be done in and about the premises as fully as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney shall lawfully do or cause to be done by virtue hereof.

This Power of Attorney shall not be affected by the disability of the principal subsequent to the execution thereof.

The decedent signed his name at the end of the document and had it notarized.

On approximately June 10 of the same year, the decedent's health deteriorated and he was hospitalized. By June 18, Hook had drafted the deed to the R.D. # 1 property. Appellant signed the document for her father as grantor and as joint grantee pursuant to the power of attorney, and also signed in her own name as joint grantee. The deed cited "no consideration" for the conveyance. Attorney Hooks testified at trial that the decedent directed him to draft a deed because appellant had agreed to care for him for the rest of his life. The decedent died on July 1, 1992. Because he had been hospitalized from the time of the conveyance until the time of his death, appellant never cared for him in his home at R.D. # 1.

Taylor, in her capacity as executrix of her father's estate, filed the underlying suit in equity on January 25, 1993, seeking to set aside the conveyance to appellant. She argued that appellant had no authority to convey property as a gift. A non-jury trial was held on December 10, 1993. On February 17, 1994, the trial judge ordered appellant to convey the property to the decedent's estate. Appellant filed post-verdict motions which the trial court denied, thereby finalizing the decree nisi. Specifically, the trial judge found that (1) appellant had no authority under the power of attorney to make gifts of property because no express power to make gifts was included in the document pursuant to 20 Pa.C.S.A. § 5602; (2) there was no consideration for the conveyance; and (3) the transaction was void because appellant maintained a confiden-

tial relationship with the decedent. The following timely appeal ensued.

Appellant raises five issues for our review:

1.  Did the trial court err in holding that there was insufficient evidence to show valid consideration for the deed exchanged between Lois Vernon and the Appellee's decedent, George R. Hixon?

2.  Did the trial court err in finding that Lois Vernon did not have the authority under the Power of Attorney granted her by George R. Hixon to execute a deed in his behalf conveying his real estate to himself and Lois Vernon as joint tenants with right of survivorship?

3.  Did the trial court err in finding that the transaction between George R. Hixon and Lois E. Vernon failed due to the confidential relationship between the two as father and daughter, even if there is a finding of valid consideration?

4.  Did the trial court err in failing to give proper weight to the testimony of Mr. Hixon's attorney, David Hook, Esquire, with regard to the fact that the deed from Mr. Hixon to Lois Vernon and himself as joint tenants with right of survivorship was drafted according to Mr. Hixon's request and instructions?

5.  Did the trial court err in sustaining objections to testimony offered at trial by Ensil Miller and Randy Hixon, which testimony would have presented further evidence of consideration for the deed and Mr. Hixon's intentions in this transaction with Lois E. Vernon?

We shall consider appellant's second claim, concerning whether she had the power to make gifts, first. Should we decide that the power of attorney which the decedent granted to appellant authorized her to make gifts of property, the question of whether the transfer was made for valid consideration would be rendered moot.

Appellant argues that under the recent Pennsylvania Supreme Court decision in *Estate of Reifsneider*, 531 Pa. 19, 610 A.2d 958 (1992), the power of attorney need not contain

express or similar language, found in 20 Pa.C.S.A. § 5602, conferring the power to make gifts so long as the principal—in this case George Hixon—intended the attorney-in-fact to have that power. Section 5602 of the Probate, Estate and Fiduciaries Code provides:

### § 5602. Form of Power of Attorney

(a) Specification of powers.—A principal may, by inclusion of the language quoted in any of the following paragraphs or by inclusion of other language showing a similar intent on the part of the principal, empower his attorney-in-fact to do any or all of the following, each of which is defined in section 5603 (relating to implementation of power of attorney):

\*  \*  \*  \*  \*  \*

(1) Either:

  (i) "to make gifts"; or

  (ii) "to make limited gifts."

20 Pa.C.S.A. § 5602. In *Estate of Reifsneider*, the decedent's wife gave her daughters from a previous marriage power of attorney to conduct her affairs. When the decedent died, the daughters, acting pursuant to the power of attorney, filed a notice of spousal election to take against the decedent's will, and sought to approve the filing under 20 Pa.C.S.A. § 5603(d). The Estate of the decedent contested the election arguing that the power of attorney did not authorize the filing of an election against the will in express or similar language as required under section 5602 of the Probate, Estates and Fiduciaries Code. The trial court held that because the power to file an election against the estate was not expressly included in the power of attorney in accordance with section 5602, the daughters were not authorized to make the election. This Court affirmed and the Supreme Court granted a petition for allowance of appeal.

An overwhelming majority of the Supreme Court reversed the trial court, holding that the General Assembly's codification of power of attorney principles of law was not mandatory and did not supersede well-established common law principles.

Relying on the provisions of section 5602(a), that any of the powers may be delegated "by the inclusion of the language quoted ... *or by inclusion of other language showing a similar intent,*" the Supreme Court reasoned:

> [W]e do not think it necessary for the legislature to alter the law when it chooses to enter a field theretofore occupied by the common law. The reduction to statutory law of precepts already established in case law is in itself a legitimate legislative purpose. Second, the statute can be given meaningful application without resorting to the restrictive interpretation of the court below. Simply put, general language *can* "show a similar intent on the part of the principal" to empower the attorney-in-fact to do one or more of the listed things if the general language, according to its common usage, would be understood as encompassing such power or powers. Often, the very purpose of using broad language is to avoid the limiting effects of specific language to address all aspects of a class of activity without the need to anticipate and identify each individually. And when an attorney-in-fact performs one of the activities listed in § 5602(a) under authority of general language, section 5603 provides the definitions and limitations that circumscribe his activity.

*Estate of Reifsneider,* 531 Pa. at 26, 610 A.2d at 962 (emphasis in original).

Because the power of attorney from Mrs. Reifsneider to her daughters included general language authorizing the daughters to commence any legal proceedings touching any matter in which she might be involved in any way as they in their sole discretion saw fit, the court found that Mrs. Reifsneider intended to authorize the attorneys-in-fact to make an election to take against her husband's will. *Id.* at 26–27, 610 A.2d at 962.

More recently the Supreme Court, in a per curiam decision which relied upon the decision in *Reifsneider,* reversed this Court's memorandum decision in *Brenner v. Manmiller,* 389 Pa.Super. 644, 560 A.2d 822 (1989) (No. 2767 Philadelphia 1987, filed March 3, 1989), *rev'd,* 531 Pa. 209, 611 A.2d 1199

(1992). In *Brenner*, the decedent, who had been hospitalized, moved in with his grandson and his grandson's wife, Brenda Manmiller. He subsequently executed a power of attorney appointing Mrs. Manmiller as his attorney-in-fact. The power of attorney provided, in pertinent part:

> To make disbursements of monies belonging to me, in such a manner, at such times and for such purposes as my said attorney may, in her sole unrestricted discretion and judgment, deem best for my benefit and welfare and further for the maintenance, storage, upkeep and repair of any real or personal property owned by me.
>
> \* \* \* \* \* \*
>
> In addition to all of the powers of my attorney hereinbefore stated, I empower my attorney to exercise all of the powers including the broadest set forth in section 5602(a) of the Probate, Estates and Fiduciaries Code, as amended.

Pursuant to the power of attorney, Mrs. Manmiller began to conduct the decedent's affairs. At one point, she closed one of the decedent's savings accounts and transferred the proceeds totalling $32,310.47 into her personal account. Upon the death of the decedent, certain beneficiaries filed an action in equity to recoup the amount which Mrs. Manmiller had transferred into her account.

A panel of this Court found that powers of attorney are required to contain the express language of section 5602 or language similar to the wording in section 5602, in order to vest the authority to make gifts. The panel deemed the power of attorney executed to be insufficient to vest the authority to makes gifts. Op. at 914–915. Without explanation, the Supreme Court reversed, citing only to its decision in *Estate of Reifsneider*. The only conclusion we can garner from the Supreme Court's reversal is that the power of attorney sufficiently authorized Mrs. Manmiller to make gifts.

In the case at hand, the trial judge ruled that the power of attorney did not authorize Lois Vernon to make a gift of property to herself. He reasoned that appellant engaged in self-dealing by conveying the parcel of land to her father and

herself as joint tenants. He also found that the language of the instant power of attorney only allowed appellant to act for Mr. Hixon's use and benefit. He concluded that the transaction did not result in any benefit to Mr. Hixon. In light of the Supreme Court's reversal in *Brenner v. Manmiller,* however, we cannot agree. Arguably, Mrs. Manmiller, too, engaged in self-dealing by transferring to herself a substantial sum of money from her principal's savings account. Nonetheless, the Supreme Court found her actions were proper under the power of attorney executed. We also note that power of attorney in *Brenner* similarly required the attorney-in-fact to act for the principal's "benefit and welfare." The Supreme Court seemingly found the recitation of this language to be of no import in determining whether the power to make gifts exists. Therefore, the inquiry into whether a power of attorney confers a benefit on the principal without conferring a benefit on the attorney-in fact is irrelevant. Rather, this case turns upon whether the principal *intended* to empower the attorney-in-fact to make the gift at issue. *Estate of Reifsneider, supra.*

The power of attorney which Hixon executed authorized appellant to "convey . . . lands, tenements, and hereditaments upon such terms and conditions and under such covenants as she shall think fit." The document does not limit the types of conveyances or the purposes for which conveyances can be made. Instead, the document allows the attorney-in-fact to makes conveyances *as she sees fit.* Further, the concluding paragraph of the power of attorney accords the attorney-in fact "full power and authority to do and perform every act necessary, requisite, or proper to be done in and about the premises *as fully as [Hixon] might or could do if personally present.*" Although the power of attorney utilizes general language, we find that it sufficiently evidences the principal's intent to allow appellant to make gifts consisting of property conveyances. We arrive at this conclusion because the power authorized her to use her discretion in deciding how to conduct her father's affairs. Having determined that Mrs. Vernon had the authority to make gifts under the power of

488

attorney, we need not consider her other claims of error. Appellant had full authority to gift the property to herself and the decedent under the terms of the power of attorney.

Decree nisi is reversed. Case is remanded for entry of a final decree in favor of appellant. Jurisdiction is relinquished.