In the Matter of Earl R. MOSTELLER, Settlor, now deceased, Appellee.

Appeal of Bruce GILBERT, Executor of the Estate of Earl R. Mosteller, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 2, 1998.

Filed Oct. 30, 1998.

Allen E. Ertel, Williamsport, for appellant.

Jonathan E. Butterfield, Williamsport, for appellee.

Before JOYCE, J., HESTER, Senior Judge, and CIRILLO, President Judge Emeritus.

HESTER, Senior Judge:

Bruce Gilbert, in his capacity as executor of the estate of Earl Mosteller, appeals the June 26, 1997 order granting in part and denying in part his exceptions to the first and final account of Meridian Trust Company, Appellee. We reverse and remand.

The material facts are not in dispute. Appellant is the nephew of Earl Mosteller. Mr. Mosteller executed two documents that are relevant to our adjudication herein. On August 28, 1989, he executed a living trust, in which he placed his assets. Commonwealth Bank and Trust Company, N.A. ("Commonwealth") was named trustee of the living trust, over which Mr. Mosteller retained full power to revoke.

On September 19, 1989, Mr. Mosteller executed a power of attorney in favor of Commonwealth and Appellant. Among the powers he gave to his attorneys-in-fact included the right to "create a trust and/or make additions to an existing trust for my benefit" and to "engage in and transact in my name all business that they or either of them may think proper." Reproduced Record ("R.R.") at 121a, 122a. Finally, he gave his attorneys-in-fact these powers with "[a]ll with the same power to all intents and purposes with the same validity as I could do if personally present." R.R. at 122a.

On September 9, 1993, Mr. Mosteller was declared incapacitated and Appellant was named one of the co-guardians of his person. Due to the existence of the power of attorney, no guardian of the estate was named. In the meantime, on August 13, 1993, Commonwealth merged into Meridian Bank and ceased to exist. On October 15, 1993, Meridian paid counsel fees to its counsel for his attendance at the proceedings regarding Mr. Mosteller's incapacity. Appellant objected and revoked the trust. Meridian refused to honor the revocation and continued to hold and manage the money, paying fees to itself and to its counsel.

On November 1, 1993, Appellant was notified that Commonwealth no longer existed and that it was transferring its trust powers to Meridian. Appellant then objected both in

person and in writing to the transfer. In addition, on November 11, 1993, he sent another letter stating that he was revoking the trust and that he objected to the payment of counsel fees for the incompetency hearings. Again, Meridian ignored the objection to the transfer of the trust assets to it as well as the revocation of the trust.

On April 2, 1996, Mr. Mosteller died. Appellant qualified as his executor and demanded return of the trust assets. This demand was ignored. Appellee then prepared a first and final account concerning its administration of the assets of the living trust.

Appellant filed objections to the first and final account with respect to the payment of trustee fees and attorney's fees. He alleged, *inter alia*, that the trust had been revoked. After a hearing, the orphans' court denied the objections and confirmed the account. This appeal followed.

On appeal, Appellant maintains that the transfer of the trust assets to Meridian was ineffective in that Commonwealth did not have the power to transfer the trust assets. He also contends that he revoked the trust in November 1993, and had the power to do so by virtue of his power of attorney. We agree with the latter contention and therefore, do not address the former.

Appellee argues that since the power of attorney did not specifically delineate that Appellant had the power to revoke trusts, he did not have the power to do so. The orphans' court agreed with this contention. However, we believe that the law no longer allows for such a restrictive reading of powers of attorney.

In *Estate of Reifsneider*, 531 Pa. 19, 610 A.2d 958 (1992), our Supreme Court interpreted a power of attorney and the act applicable to those documents. In that case, the attorneys-in-fact of an incompetent filed an election against the estate of the husband of the incompetent. The estate argued that since the power of attorney under which the attorneys-in-fact were operating did not contain authorization to elect against an estate, the attorneys-in-fact did not have the power to do so. Our Supreme Court disagreed.

The Court first observed that prior to 1974, the law pertaining to powers of attorney was based solely on agency principles applied at common law. One of those principles provided that powers of attorney were construed strictly and that the grant of special powers was not to be enlarged absent clear intent that such enlargement was intended. Another fundamental principle was that the rule of strict construction was not allowed to defeat the purpose of the attorney-in-fact agency.

The Court went on to note the following. Legislation was enacted in 1974 that allowed for the creation of a durable power of attorney and provided that such powers were not revoked upon disability or death. In 1982, the 1974 act was replaced with a new Chapter 56 to the Probate, Estates and Fiduciaries Code, relating to Powers of Attorney. 20 Pa.C.S.A. §§ 5601–5607. Section 5601 states that the powers referred to in section 5602(a), in addition to all other powers that may be delegated to an attorney-in-fact, may now be granted lawfully to the attorney-in-fact and that unless the power of attorney provides otherwise, it shall be construed in accordance with Chapter 56. Further, section 5602(a) provides that a principal may by either the inclusion of the language outlined in section 5602(a)(1) or the inclusion of "other language showing a similar intent on the part of the principal," empower his attorney-in-fact to do the powers enumerated in section 5602(a)(1).

The power of attorney under consideration in *Reifsneider* did not include specific language stating that the attorneys-in-fact had the power to claim an elective share of the estate of the principal's deceased spouse. Included among the powers enumerated in section 5602(a)(1) is the power to claim such a share. The Court had to decide whether a principal "wishing to grant one of the powers referred to in section 5602(a) must explicitly identify the power using specific language either identical or similar to the statutory language." *Id.*, 531 Pa. at 24, 610 A.2d at 961. The Court concluded that the statute does *not* confine the manner in which powers may be granted. It stated that the powers enumerated in section 5602(a)(1) can be

granted by inclusion of *any* language showing a *similar* intent. It also held specifically that *general* language *can* show such an intent on the part of the principal.

The Court continued by examining the power of attorney at issue in that case. It concluded that language giving the attorneys-in-fact the power to commence legal proceedings, coupled with general language, empowered the attorneys-in-fact to claim an elective share even though that power was not included by specific language. In that case, the power had the following general language, "to do all other acts, deeds, matters and things whatsoever in or about my estate, property and affairs and things herein either particularly or generally described, as fully and effectually to all intents and purposes as I could in my own proper person." *Id.*, 531 Pa. at 27, 610 A.2d at 962. *See also Taylor v. Vernon*, 438 Pa.Super. 479, 652 A.2d 912 (1995) (even though power of attorney did not include the power to make gifts, such power was found to exist under language giving attorney-in-fact power to convey land together with general language granting attorney-in-fact power to perform any act principal might do if personally present); *accord Estate of Augustine*, 695 A.2d 836 (Pa.Super.1997).

■ In the present case, it is true that the power to withdraw the income and corpus of a trust was not specifically granted in the power of attorney, which is one of the enumerated powers. *See* 20 Pa.C.S.A. § 5602(a)(1)(7). However, Mr. Mosteller clearly granted Appellant the power to make trusts and to make additions to trusts. R.R. at 121a. Thus, he clearly intended for Appellant to have the power to deal with the trust. Furthermore, the power of attorney states that the attorneys-in-fact have the power to "engage in and transact in my name *all business* that they *or either of them may think proper*. All with the same power to all intents and purposes with the same validity *as I could do if personally present ...*" *Id.* at 122a (emphases added).

Mr. Mosteller had the power to revoke the living trust. He clearly intended to give Appellant the power to deal with that trust. Even though not specifically given the power to revoke, it is clear that under controlling case law, the power of attorney must be construed to confer that power on Appellant, given its broad general grant of power and its specific language allowing the attorneys-in-fact to deal with trusts.

Since Appellant had the power to revoke the living trust under the language of the power of attorney, Appellee improperly ignored that revocation and improperly continued to administer the trust. Accordingly, it is clear that Appellee is not entitled to any fees for administering the trust after the valid revocation.

■ We have reviewed the first and final account. There is no indication of when the legal services of Jonathan E. Butterfield, to which Appellant objected, were performed. R.R. at 20a. Similarly, the fees and commissions of $10,984.41 charged by Appellee are not broken down into time periods. Hence, we must remand for a hearing. Appellee is entitled to receive valid and reasonable fees and commissions from the inception of the trust to the date the trust was revoked. Fees incurred in preparation of an accounting covering that time period may also be recovered. Appellee is not entitled to any fees and commissions for any actions that it or its attorney performed after the trust was revoked.

Order reversed. Case remanded for proceedings consistent with this adjudication. Jurisdiction relinquished.