**In re: Marjorie H. WEIDNER a/k/a Marjorie H. Ross, Deceased**

**Appeal of: Walter J. WEIDNER**

Superior Court of Pennsylvania.

Argued Nov. 29, 2005.

Filed Feb. 8, 2006.

Reargument Denied April 12, 2006.

Robert W. Hallinger, Lancaster, for appellant.

Kendra D. McGuire, Lancaster, for appellees.

Before: JOYCE, ORIE MELVIN and TAMILIA, JJ.

## OPINION BY ORIE MELVIN, J.:

¶ 1 In this declaratory judgment action, Appellant, Walter J. Weidner, appeals from the order entering judgment on the pleadings in favor of Appellees, Susan L. Rhodes, Carol A. Doersom, Donald E. Ross, Jane Kabai, and Elizabeth Tickner, who are the adult children and stepchildren of the decedent, Marjorie H. Weidner. On appeal, Appellant challenges whether Ms. Rhodes, as the decedent's attorney-in-fact, had the authority to change the beneficiary designation of the decedent's life insurance policy. We reverse.

¶ 2 The facts and procedural history may be summarized as follows. On April 21, 1994, Appellant and the decedent were married. Because this was a second marriage for both, the parties entered into a pre-nuptial agreement. The agreement recognized that they each had children from a previous marriage and expressed their desire to maintain their separate property for the benefit of their children. Declaratory Judgment Petition, at Exhibit A. Paragraph 3 of the agreement also stated in part:

> 3. The parties agree that all property presently owned by either of them or acquired by either of them hereafter of whatsoever nature and wheresoever located and all income derived therefrom and all increases in the value thereof, shall be and remain their respective separate property. The parties agree that at no time during their relationship shall there be any transmutation of any of their separate property interests into jointly owned property, except by an express written agreement; provided, however, that the parties agree that they shall have the right to open joint checking/savings bank accounts and to name each other as beneficiaries on their life insurance policies (but not annuities) without otherwise affecting the validity of the Agreement;...

*Id.* at ¶ 3.

¶ 3 On July 15, 1994, the decedent purchased a life insurance policy with Metro-

politan Life Insurance Company (MetLife) with a face amount of $108,000. The decedent designated Appellant as the beneficiary. The life insurance policy was purchased by the conversion of an annuity policy owned by decedent prior to her marriage.

¶ 4 Prior to her marriage to Appellant, the decedent executed a durable general power of attorney which named Ms. Rhodes and Ms. Doersom as her attorneys-in-fact. On June 21, 1999, Ms. Rhodes contacted MetLife and instructed them to change the named beneficiary of the life insurance policy from Appellant to herself and her siblings. MetLife inquired into the beneficiary change by letter dated November 16, 1999. Ms. Rhodes responded through her attorney by letter dated March 16, 2000 explaining the decedent's incapacity[1] and the legal basis for the change under the power of attorney and requesting that change be made immediately. The decedent was never notified of the beneficiary change.

¶ 5 On September 16, 2003, the decedent died. When Appellant attempted to redeem the life insurance policy, MetLife informed him for the first time about the change in beneficiary effective June 21, 1999. On January 8, 2004, Appellant filed the instant declaratory judgment action. Appellant asserted three grounds for relief. In Count I, he alleged the power of attorney was legally insufficient to allow Ms. Rhodes to engage in insurance contracts on behalf of decedent because it did not include general language granting such power or the specific language set forth in 20 Pa.C.S.A. § 5602(a). In Count II, he alleged that the change of beneficiary was tantamount to a gift by Ms. Rhodes to herself and the other Appellees and that

such a transaction was null and void in the absence of specific language authorizing her to make gifts on behalf of the decedent. Finally, in Count III, Appellant alleged that Ms. Rhodes breached her fiduciary duty to the decedent by changing the beneficiary solely to benefit herself and the other Appellees. On April 6, 2004, Appellees filed an Answer and New Matter to which Appellant replied on April 16, 2004. On November 1, 2004, Appellees filed a motion for judgment on the pleadings. Following Appellant's Answer and the filing of supporting briefs, by order entered May 11, 2005, the trial court granted the motion and ordered MetLife to disburse the policy proceeds to Appellees. This appeal followed.

¶ 6 Appellant presents three questions for our review:

1. Does 20 Pa.C.S. § 5602, *In re Estate of Reifsn[ei]der*, 531 Pa. 19, 610 A.2d 958 (1992), and the language of the instrument, authorize the attorney-in-fact to make the beneficiary change in the life insurance policy, where the instrument authorizes several specific powers and then incorporates all powers listed in the Code, rather than using some language showing intent to authorize the specific type of transaction at issue?

2. Should the trial court have considered only whether the power of attorney authorized the attorney-in-fact to change beneficiaries under insurance policies, and declined to consider the principal's expressed intent regarding the particular beneficiary designation under the life insurance policy at issue, or whether a breach of fiduciary duty by the attorney-in-fact would void the change of beneficiary by the attorney-in-fact, even if the

---

1. The decedent in this matter suffered from Alzheimer's disease. The parties dispute the date of diagnosis and whether she was of sound mind when she carried out the transactions in 1994.

**14**

power of attorney authorized the type of transaction generally?

3. Do the pleadings establish that the principal intended to authorize the attorney-in-fact to change the principal's named beneficiary during the principal's lifetime without any notice of the principal?

Appellant's brief, at 4.[2]

¶ 7 When reviewing the decision of the trial court in a declaratory judgment action we are limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion. *Theodore C. Wills Company, Inc. v. School District of Boyertown,* 837 A.2d 1186, 1188 (Pa.Super.2003).

¶ 8 "In reviewing a trial court's decision to grant judgment on the pleadings, the scope of review of the appellate court is plenary; the reviewing court must determine if the action of the trial court was based on a clear error of law." *Com. ex rel. Anderson v. Fidelity & Deposit Co. of Maryland,* 811 A.2d 1040, 1041 (Pa.Super.2002), *appeal denied,* 577 Pa. 694, 845 A.2d 816 (2004). "A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Swartz v. Swartz,* 456 Pa.Super. 16, 689 A.2d 302, 303 (1997). An appellate court must accept as true all well-pleaded statements of facts, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed,

considering only those facts which have been specifically admitted. *Shirley by Shirley v. Javan,* 454 Pa.Super. 131, 684 A.2d 1088, 1089 (1996), *appeal dismissed,* 551 Pa. 587, 712 A.2d 281 (1998). "Judgment on the pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary." *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 429, 664 A.2d 84, 86 (1995).

¶ 9 Appellant first contends the trial court erred in determining that the power of attorney authorized Ms. Rhodes to change the beneficiary designation of decedent's insurance policy. He argues that the language of the power of attorney failed to comply with 20 Pa.C.S.A. § 5602. He also contends the trial court erred in relying on *In re Reifsneider,* 531 Pa. 19, 610 A.2d 958 (1992).

¶ 10 We begin by reviewing the applicable provisions of the Decedent's, Estates and Fiduciaries Code relating to powers of attorney.[3]

### § 5601. General provisions

(a) **General rule.** -In addition to all other powers that may be delegated to an attorney-in-fact, any or all of the powers referred to in section 5602(a) (relating to form of power of attorney) may lawfully be granted in writing to an agent and, unless the power of attorney expressly directs to the contrary, shall be construed in accordance with the provisions of this chapter.

20 Pa.C.S.A. § 5601.

### § 5602. Form of power of attorney

(a) **Specification of powers.—A principal may, by inclusion of the lan-

2. We have reordered Appellant's claims on appeal for purposes of review.

3. Because the decedent executed her power of attorney in April of 1993, we will review only those sections of the Act as they existed

prior to the 1999 amendments. *See* Act of October 12, 1999, P.L. 422, No. 39, § 13; *In re Estate of Cambest,* 756 A.2d 45, 51 n. 3, 4 (Pa.Super.2000).

guage quoted in any of the following paragraphs or by inclusion of other language showing a similar intent on the part of the principal, empower his attorney-in-fact to do any or all of the following, each of which is defined in section 5603 (relating to implementation of power of attorney):

\*    \*    \*    \*    \*    \*

(17) "To engage in insurance transactions."

20 Pa.C.S.A. § 5602 (emphasis added).

**§ 5603.  Implementation of power of attorney.**

\*    \*    \*    \*    \*    \*

**(p) Power to engage in insurance transactions.**  -A power to "engage in insurance transactions" shall mean that the attorney-in-fact may:

\*    \*    \*    \*    \*    \*

(3) In general exercise all powers with respect to insurance that the principal could if present;  however, the attorney-in-fact cannot designate himself a beneficiary of a life insurance policy **unless the attorney-in-fact is the spouse, child, grandchild, parent, brother or sister of the principal.**

20 Pa.C.S.A. § 5603 (emphasis added).

¶ 11 The power of attorney executed by the decedent named Ms. Rhodes and Ms. Doersom her attorneys-in-fact and authorized them:

> . . . to execute notes, checks, drafts and bills of exchange and to pledge my general credit, without any limitation whatsoever;  to endorse notes, checks, drafts and bills of exchange which may require my endorsement and to collect the proceeds thereof;  to collect all coupons, dividends, rents or other income whatsoever due me;  to draw checks or any other instruments in my name for all or any part of any deposit that I may

have in any banking or savings institution whatsoever;  to take charge and custody of all my assets, real, personal and mixed, whatsoever, and wheresoever situate;  to pay over to me from time to time, and whenever by me demanded, my net income;  to endorse, sign and transfer stock certificates, or any other document or paper that may require my signature;  to sell, lease, or convert any or all my assets, real, personal and mixed whatsoever, and to reinvest the proceeds thereof from time to time;  to receive full or partial payment of debts owing to me including those secured by judgment, mortgage or security agreement and to enter full or partial satisfaction on the record of such debt, judgment, mortgage or security agreement and release from the lien thereof, any property bound by such debt, judgment, mortgage or security agreement;  to prepare, sign and execute all tax returns or other statements that may be required of me by law;  and this Power of Attorney shall not be affected by disability of the principal, whether physical or mental, and the authority conferred herein shall be exercisable notwithstanding his/her disability, and later uncertainty as to whether the Principal is dead or alive in accordance with Act No. 295 effective December 10, 1974 (20 Pa.C.S. 5601). This Power of Attorney includes the authority to deal fully and in all respects including purchasing and selling, with any and all now owned or after-acquired real estate and/or personal property, **and I also hereby grant unto my said Attorney, the power and authority to do any act which is set forth in Chapter 56 of Title 20 of the Pennsylvania Consolidated Statutes Annotated, (20 Pa.C.S.A. 5601 through 5607), known as "Powers of Attorney", as amended from time to time.  I incorporate**

**herein by reference thereto, all of the provisions set forth in said Act;** and the authority herein conferred shall also extend to my Attorney–in–Fact being authorized to enter any safe deposit box in my name at any lending institution, and to sign, seal, execute acknowledge and deliver all instruments, agreements and contracts necessary or proper for carrying out the powers herein granted, with the same powers and to all intents and purposes with the same validity as I could, if personally present; hereby ratifying and confirming whatsoever my said attorney shall or may do by virtue thereof.

Declaratory Judgment Petition, at Exhibit B.[4]

¶ 12 In determining that the general language set forth in the power of attorney authorized Ms. Rhodes to change the beneficiary designation, the trial court relied on *In re Reifsneider*, 531 Pa. 19, 610 A.2d 958 (1992).[5] There, the decedent's wife executed a power of attorney naming her daughters from a previous marriage as attorneys-in-fact. The instrument generally empowered them to "do all acts, deeds, matters and things whatsoever in or about my estate, property and affairs and things herein either particularly or generally described, as fully and effectually to all intents and purposes as I could in my own proper person." *Id.* at 27, 610 A.2d at 962. Following the decedent's death, the attorneys-in-fact filed a notice of election

to take against the decedent's will on behalf of their mother. The decedent's estate contended that the power of attorney did not authorize the filing of an election to take against the will. At issue was whether a principal wishing to grant one of the powers referred to in § 5602(a) must explicitly identify the power using specific language either identical or similar to the statutory language. *Id.* at 24, 610 A.2d at 961. "Put another way, [at issue was whether] the statute prevents courts from giving effect to general language, which would otherwise be considered to encompass a power identified in section 5602(a), because the language fails to explicitly identify the power[.]" *Id.*

¶ 13 Our Supreme Court held that in light of the general language empowering the attorney-in-fact "to do all acts, deeds, matters and things whatsoever in or about my estate, property and affairs and things herein either particularly or generally described, as fully and effectually to all intents and purposes as I could in my own proper person," that specific language permitting an election to take against the will was not required. In finding that the general language of the power of attorney authorized the attorneys-in-fact to make the election, the Court stated:

> On its face, the language of this statute does not suggest that its provisions are to be restrictive or exclusive. Indeed the statute contains several phras-

---

4. The power of attorney attached to Appellant's declaratory judgment petition is unsigned and undated.

5. We recognize that our legislature specifically overruled *Reifsneider* to the extent that it would permit an agent to make a gift under a power of attorney which does not specifically provide for that power. *See Metcalf v. Pesock*, 885 A.2d 539 (Pa.Super.2005); 20 Pa. C.S.A. § 5601.2 Official Comment–1999 (stating, "The purpose of these subsections is to provide that when the principal intends to

authorize the agent to make a gift under the power of attorney, that authorization is specifically stated in the power of attorney. The principal may no longer authorize the agent to make an unlimited gift by incorporation by reference."). Although Appellant did raise allegations related to an attorney-in-fact's ability to make gifts based upon a power of attorney, he has not pursued that matter on appeal. *See* Trial Court Opinion, 5/11/05, at 9 n.10.

es supporting the contrary view. The general provision, section 5601, begins with the acknowledgement that the listed powers, which may be lawfully delegated in writing are "[i]n addition to all other powers that may be delegated to an attorney-in-fact". It further states that the grant of any of the listed powers shall be construed according to section 5603 "unless the power of attorney expressly directs to the contrary." From this we conclude that the statute does not limit the subjects that may properly be addressed by powers of attorney, nor does it confine the way such powers may be defined. Likewise, the prefatory paragraph of section 5602(a) does not fix an invariable form for powers of attorney. Instead, it establishes that any or all of the powers listed may be delegated "by inclusion of the language quoted *or by inclusion of other language showing a similar intent."* (emphasis added).

\*    \*    \*    \*    \*    \*

Simply put, general language *can* "show a similar intent on the part of the principal" to empower the attorney-in-fact to do one or more of the listed things if the general language, according to its common usage, would be understood as encompassing such powers. Often, the very purpose of using broad language is to avoid the limiting effects of activity without the need to anticipate and identify each individually. And when an attorney-in-fact performs one of the activities listed in § 5602(a) under authority of general language, section 5603 provides the definitions and limitations that circumscribe this activity.
*Id.* at 25–26, 610 A.2d at 961–962.

¶ 14 Upon review, we agree with Appellant's contention that the trial court read *Reifsneider* too broadly in applying it to the present case. Unlike *Reifsneider,* where the general language could be understood as encompassing powers to make an election, the power of attorney here cannot. The problem with the instant power of attorney is that it does not include any language, let alone general language empowering the attorney-in-fact to deal with insurance matters. The decedent's power of attorney merely provided the attorney-in-fact with authority to do any act as set forth in Chapter 56 of Title 20 and incorporated those provisions by reference. We find this method of granting powers to be insufficient as it fails to apprise the principal of what type of powers are listed in the power of attorney statute. Absent notice, either by use of at least some form of general language or an attachment of the statutory provisions, we cannot presume that a principal intended to grant such powers.

¶ 15 *Reifsneider* merely stands for the proposition that general language used in a power of attorney document can serve to grant the specific powers found in § 5602(a) and as defined in § 5603. This is not the same as allowing incorporation of § 5602(a) by reference as being sufficient to supply the requisite general language. The power of attorney document at issue here does not have broad general language which according to its common usage would be understood as encompassing the listed powers of § 5602(a). Clearly, the decedent/principal in this matter did not use any language generally authorizing Ms. Rhodes to engage in insurance matters. Thus, resort to § 5602(a) to supply such authorization was improper.

¶ 16 We also agree with Appellant that *In re Mosteller,* 719 A.2d 1067 (Pa.Super.1998), upon which the trial court relied, is likewise distinguishable. There, the power of attorney authorized the attorney-in-fact to create a trust and/or make additions to an existing trust. At issue was

whether the power of attorney empowered the attorney-in-fact to revoke the trust, which was an enumerated power pursuant to 20 Pa.C.S.A. § 5602(a)(7). Relying on *Reifsneider*, this Court found the decedent clearly intended for the attorney-in-fact to have the power to deal with the trust. Although not specifically given the power to revoke, the Court found that "under controlling case law, the power of attorney must be construed to confer that power on the [attorney-in-fact], given its broad general grant of power and its specific language allowing the attorneys-in-fact to deal with trusts." *Id.* at 1069.

¶ 17 Unlike *Mosteller*, which generally provided the attorney-in-fact could deal with trusts, the power of attorney in the present case did not generally provide Ms. Rhodes with authority to engage in any matters related to insurance. Accordingly, we find the trial court erred in finding the power of attorney authorized Ms. Rhodes to change the beneficiary designation at issue. *Cf. Taylor v. Vernon*, 438 Pa.Super. 479, 652 A.2d 912 (1995) (holding that even though the power of attorney did not include the power to make gifts, the power to execute a deed transferring land from the principal to the principal and attorney-in-fact as joint tenants was found to exist under language giving the attorney-in-fact power to convey land together with general language granting the attorney-in-fact the power to perform any act the principal might do if personally present).[6]

¶ 18 Order reversed. Case remanded for the entry of judgment on the pleadings in favor of Appellant. Jurisdiction relinquished.

---

**6.** As a result of our disposition, we need not address Appellant's remaining issues on appeal.