911 A.2d 1258

**In re MILTON HERSHEY SCHOOL and Hershey Trust Company, Trustee of Milton Hershey School Trust.**

**Appeal of Attorney General of Pennsylvania.**

**In re Milton Hershey School and Hershey Trust Company, Trustee of Milton Hershey School Trust.**

**Appeal of Hershey Trust Company and Milton Hershey School.**

Supreme Court of Pennsylvania.

Argued May 9, 2006.

Decided Dec. 28, 2006.

36

37

John G. Knorr, Mark A. Pacella, Harrisburg, for Atty. Gen. of Pennsylvania.

38

Eric Carriker, Boston, MA, for Attys. Gen. from Massachusetts and Maine, appellant amici curiae in No. 137.

Michael S. DeLucia, Concord, NH, for Atty. Gen. from New Hampshire, appellant amicus curiae in No. 137.

Douglas A. Bahr, Bismarck, ND, for Atty. Gen. from North Dakota, appellant amicus curiae in No. 137.

Howard A. Rosenthal, Gary Dean Fry, Philadelphia, for Bd. of Directors of City Trusts, appellant amicus curiae in No. 138.

James F. Monteith, John William Schmehl, Philadelphia, Victor Paul Stabile, Harrisburg, F. Frederic Fouad, pro hac vice, for Milton Hershey School Alumni Ass'n.

Thomas B. Schmidt, Harrisburg, James M. Sheehan, Barbara W. Mather, Philadelphia, for Hershey Trust Co. and Milton Hershey School.

BEFORE; CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice EAKIN.

In 1909, Milton and Catherine Hershey established the Milton Hershey School, a charitable institution, funded by the Milton Hershey School Trust. The deed of trust is the original agreement between the Hersheys, the Hershey Trust Company as Trustee, and the Managers of the Trust. The deed, as amended in 1976, provides that the Trust Company and the Board of Managers (which consists of members of the Board of Directors of the Trust Company), are to administer the Trust and have responsibility for all aspects of running the School and for managing the Trust's assets. The deed also states, "[a]ll children shall leave the institution and cease to be the recipients of its benefits upon the completion of the full course of secondary education being offered at the School." *In re Milton Hershey School*, 867 A.2d 674, 678 (Pa.Cmwlth. 2005) (quoting Deed of Trust, November 15, 1909, at 12–13).

In 1930, at Milton Hershey's direction, school alumni and a former superintendent formed The Milton Hershey School Alumni Association. The Association is composed mostly of School graduates, though it includes honorary and associate members. The Association is not a division of the School or Trust Company; it was not named in the deed of trust and is not an intended beneficiary of the Trust.

Around 1990, the Association believed the Trust's resources were being diverted from the purpose of helping orphaned children. The Association contacted the Attorney General, which investigated and concluded the Trust Company was not acting consistent with the Trust's intent. In 2002, the Attorney General, the School, and the Trust Company entered an agreement governing certain aspects of the administration of the Trust and the School.

In 2003, this agreement was modified, essentially rescinding the 2002 agreement. Following the modification, the Association commenced an action in the orphans' court, seeking rescission of the 2003 agreement, reinstatement of the 2002 agreement, and appointment of a guardian *ad litem* and trustee *ad litem*. The School and the Trust Company filed preliminary objections alleging the Association lacked standing to challenge the rescission of the 2002 agreement; the trial court granted the preliminary objections.

The Commonwealth Court, *en banc,* reversed in a four-to-three decision, finding the Association had a "special interest" in the complained-of actions of the Trustee that supported its standing to seek enforcement of the Trust. *See In re Milton Hershey School,* at 691. The court observed the Association was created at the direction of the Trust's primary settlor, with the purpose of promoting school interests and establishing and maintaining supplemental education programs and activities for students. *Id.,* at 677–78. It also summarized the Association's efforts to preserve School traditions and Trust assets, including prompting of the Attorney General to address perceived improprieties, and expending its own financial resources to aid that investigation. *Id.,* at 678–80.

40

The court acknowledged standing generally requires a "substantial, direct, and immediate interest" in the subject matter of the litigation. *Id.,* at 684 (quoting *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975)). It observed in charitable trusts, courts have fashioned a "special interest" doctrine, consistent with the Restatement (Second) of Trusts. *Id.,* at 686–87 (quoting Restatement (Second) Trusts § 391 (1959) ("A suit can be maintained for the enforcement of a charitable trust by the Attorney General or other public officer, or by a co-trustee, or by a person who has a special interest in the enforcement of the charitable trust. . . .")). The court cited *Valley Forge Historical Society v. Washington Memorial Chapel,* 493 Pa. 491, 426 A.2d 1123 (1981) (approving standing of historical society to restrain trustees of memorial chapel from evicting society from chapel under special interest doctrine), and *Wiegand v. Barnes Foundation,* 374 Pa. 149, 97 A.2d 81 (1953) (citing Restatement (Second) Trusts § 391). The court then implemented a five-part test to determine special interest standing in the charitable trust setting, which requires consideration of:

> (1) the extraordinary nature of the acts complained of and the remedy sought; (2) the presence of fraud or misconduct on the part of the charity or its directors; (3) the attorney general's availability or effectiveness; (4) the nature of the benefited class and its relationship to the charity; and (5) subjective, case-specific circumstances.

*In re Milton Hershey School,* at 689 (quoting Mary Grace Blasko *et al., Standing to Sue in the Charitable Sector,* 28 U.S.F. L.Rev. 37, 61–78 (1993)). The court found this test struck the best balance, preventing unnecessary litigation involving charities while assuring the philanthropic purposes underlying trusts are maintained. *Id.*

Applying this test, the court found the circumstances here to be extraordinary, citing the need for reform administration of Trust assets, the decrease in the number of children the School served vis à vis over $5 billion in Trust assets, and the Association's instrumental role in addressing problems in the

Trust's administration. *Id.*, at 690. The court delineated the 70-year relationship between the Association and the Trust, including their common founder, the membership's successful participation in School affairs, its ongoing bonds with students, the location of the Association's offices on Trust lands, the Association's administration of student-related activities and graduate assistance programs, and the Association's intimate knowledge of the type of care provided at the School. *Id.*

The court indicated the risk of vexatious or unreasonable litigation was "virtually non-existent," as the Association only sought reasons why the 2002 agreement was supplanted, when such agreement had resulted from an extensive investigation by the Attorney General (funded in part by the Association), which concluded the Trust's charitable purposes were being impeded. *Id.* The court also found the Association's efforts neither vexatious nor unreasonable. *Id.* Given the nature of the Trust and its status as the largest residential childcare charity in the world, the court concluded judicial scrutiny would advance the public interest in assuring the Trust is operating efficiently and effectively. *Id.*

President Judge Colins, joined by Judges Cohn Jubelirer and Simpson, dissented, arguing the analysis should begin and end with the deed of trust, which endows the Board of Managers and the Trust Company with responsibility for School management and Trust administration, and which does not name the Association as an intended beneficiary. *See In re Milton Hershey School*, at 691 (Colins, P.J., dissenting) ("To now give the Association legal rights that were expressly excluded by the Settlor of the Trust is a dangerous expansion of standing not supported by over 300 years of case law within the Commonwealth."). The dissent pointed out that affording the Association standing interferes with the performance of the Attorney General's statutorily mandated duties. *Id.*, at 692. The dissent also characterized the majority's holding as "a quantum leap" away from historical concepts of standing. *See id.*

■ The facts are not in dispute. The Commonwealth Court found the trial court committed an error of law by granting the preliminary objections. *Id.*, at 691; *see also In re Estate of Bartol*, 846 A.2d 209, 213 (Pa.Cmwlth.2004) (order sustaining preliminary objections affirmed unless trial court committed abuse of discretion or error of law). We are left to decide whether the Commonwealth Court committed an error of law in its standing analysis. *Crawford Central School District v. Commonwealth*, 585 Pa. 131, 888 A.2d 616, 619 (2005). As this is a purely legal question, our standard of review is *de novo* and scope of review is plenary. *Craley v. State Farm Fire and Casualty Company*, 586 Pa. 484, 895 A.2d 530, 539 n. 14 (2006).

■ The core concept of standing is that "a party who is not negatively affected by the matter he seeks to challenge is not aggrieved, and thus, has no right to obtain judicial resolution of his challenge." *City of Philadelphia v. Commonwealth*, 575 Pa. 542, 838 A.2d 566, 577 (2003). A litigant is aggrieved when he can show a substantial, direct, and immediate interest in the outcome of the litigation. *William Penn Parking Garage, Inc.*, at 280. A litigant possesses a substantial interest if there is a discernable adverse effect to an interest other than that of the general citizenry. *Id.*, at 282. It is direct if there is harm to that interest. *Id.* It is immediate if it is not a remote consequence of a judgment. *Id.*, at 283.

■ Private parties generally lack standing to enforce charitable trusts. *In re Pruner's Estate*, 390 Pa. 529, 136 A.2d 107, 109 (1957). Since the public is the object of the settlor's beneficiaries in a charitable trust, private parties generally have insufficient interest in such trusts to enforce them. *Id.* Those who may bring an action for the enforcement of a charitable trust include the Attorney General, a member of the charitable organization, or someone having a special interest in the trust. *Valley Forge Historical Society*, at 1127 (citing *Miller's Estate*, 380 Pa. 172, 110 A.2d 200, 203 (1955); *Wiegand v. Barnes Foundation*, 374 Pa. 149, 97 A.2d 81, 82

(1953); Restatement (Second) of Trusts § 391). A person whose only interest is that interest held in common with other members of the public cannot compel the performance of a duty the organization owes to the public. *Id.* (citing *Wiegand,* at 82). The question here is whether the Association had such a special interest in the enforcement of the Trust.

In *In re Francis Edward McGillick Foundation,* 537 Pa. 194, 642 A.2d 467 (1994), the settlor directed half of a foundation's income be used to establish scholarships for Catholics, which a Catholic Bishop of Pittsburgh and his advisory board selected; the other half was to be accumulated toward the establishment of a vocational school, again with the participation of the Bishop and his advisory board. *Id.,* at 468. The Pittsburgh diocese sued to remove the Foundation's trustees. We held the diocese had standing to bring the action because it had an "integral involvement . . . in the awarding of scholarships and its prerogative to participate in the establishment of a vocational school under the trust create[d] an interest . . . which is immediate, direct, and substantial. . . ." *Id.,* at 469–70.

*In re Francis Edward McGillick Foundation* is distinguishable from the instant case on one key point; the Hershey Trust does not provide the Association with any decision-making power or administration over it. The trust in *In re Francis Edward McGillick Foundation* specifically directed the Bishop and his advisors to select scholarship recipients that were funded through the trust; thus, the diocese was directly involved in the trust's administration. Here, the Trust does not mention the Association and excludes those who would be members of the Association from benefiting from the Trust.

The Association argues *Valley Forge Historical Society* is on point. There, the Washington Memorial Chapel sought to evict the Valley Forge Historical Society from its property. Dr. W. Herbert Burk founded the Chapel and the Society, although not by a written document called a "trust." Since its inception in 1918, the Society maintained its offices and its collection in the same building as the Chapel, and claimed a right to remain there based on a trust relationship. The

Society sought declaratory and injunctive relief; the Chapel argued the Society lacked standing to bring its action. We found a trust relationship existed, and the Society had special interest standing. *Valley Forge Historical Society*, at 1127. We noted Dr. Burk intended for both the Chapel and the Society to develop patriotism, one through religion and the other through education. *Id.* The Society contributed large sums of money to enlarging the Chapel, and from its origin, was a real link to the Washington Memorial in Valley Forge; thus, the Society had a special interest distinguishable from any other historical society not designated by the trust. *Id.*

*Valley Forge Historical Society* is instructive, but distinguishable from the instant case. *Valley Forge* involved a settlor creating two foundations which shared the same building since 1918; we found a trust relationship existed. Here, the Hersheys created the Trust in 1909, but the Association was not created until 20 years later. If the Hersheys intended for the Association to have direct input on Trust affairs, they could have altered the Trust, but did not do so. The Trust has not been so amended.

More importantly, a *written* trust exists here, specifically excluding School graduates from being recipients of the Trust's benefits. The Association is not mentioned in the Trust, and the bulk of the Association's members are specifically excluded from receiving the benefits of the Trust. To give the Association "special interest" standing where the settlors of the Trust specifically denied beneficiary status to its members, would surely contravene the settlors' intent expressed through their written trust. *See In re Milton Hershey School*, at 691 (Colins, P.J., dissenting).

■ We find the Association did not have a special interest sufficient to vest it with standing. Nothing in this litigation would affect the Association itself; it loses nothing and gains nothing. The Association's intensity of concern is real and commendable, but it is not a substitute for an actual interest. Standing is not created through the Association's advocacy or its members' past close relationship with the School as former

individual recipients of the Trust's benefits. The Trust did not contemplate the Association, or anyone else, to be a "shadow board" of graduates with standing to challenge actions the Board takes. *See In re Francis Edward McGillick Foundation,* at 469 (grave doubt as to standing of stranger to object to waste of trust assets).

█ The Attorney General is granted the authority to enforce charitable trusts. *Valley Forge Historical Society,* at 1127; *see also* 71 P.S. § 732–204(c). Current law allowed the Association, an outside group, to urge the Attorney General to enforce the Trust. However, the Association's disagreement with the Attorney General's decision to modify the 2002 agreement does not vest the Association with standing to challenge that decision in court. Ultimately, the Association's dismay is more properly directed at the Attorney General's actions and decisions; it is insufficient to establish standing here.

We hold the Association did not have standing to bring this action. Order reversed. Jurisdiction relinquished.

Chief Justice CAPPY, Justices CASTILLE, NEWMAN and BAER join the opinion.

Justice BALDWIN did not participate in the consideration or decision of this case.

Justice SAYLOR did not participate in the decision of this case.