J-A24018-19

2020 PA Super 130

| | | |
|---|---|---|
| TRUST UNDER WILL OF AUGUSTUS T. ASHTON, DECEASED DATED JANUARY 20, 1950 | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: PNC BANK, N.A. | : : : : : | No. 3609 EDA 2018 |

Appeal from the Order Entered July 9, 2018
In the Court of Common Pleas of Philadelphia County Orphans' Court at
No(s):  No. 1039 of 1952

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

OPINION BY DUBOW, J.:                           **FILED JUNE 03, 2020**

Appellant, PNC Bank, N.A., appeals from the Order entered on July 9, 2018, in the Orphans' Court Division of the Court of Common Pleas of Philadelphia County.  At issue is the court's determination that Appellee, Elizabeth Ashton Reed, has standing to raise certain Objections to Appellant's administration of the Trust under the Will of Augustus Trask Ashton.  Upon review, we reverse in part and affirm in part.

**Background**

---
[*] Retired Senior Judge assigned to the Superior Court.

Augustus Trask Ashton ("Settlor") died on October 9, 1951. In his Will, he designated that the residue of his estate be placed into a trust ("Trust") for investment, with its net income available to certain beneficiaries.

The Settlor's Will identifies three groups of beneficiaries. First, Settlor provided for the annual distribution of fixed sums to certain individuals and their issue. Appellee is one such beneficiary, entitled to a payment of $2,400 annually for life.[1] Appellee's right to $2,400 is fixed and does not change based on the expenses of the Trust, market fluctuations of the assets of the Trust, or other changes to the value of the assets of the trust.

Second, Settlor provided for continued payment of educational expenses that two of his relatives incurred.[2]

Third, Settlor directed that after the Trust distributes the payments mentioned above, the Trust shall make the balance of the net income of the Trust available for scholarships for students at the University of Pennsylvania ("University"), subject to certain limitations and conditions. Settlor further directed that the Trust should continue to fund these University scholarships in perpetuity, following the termination of all annuities.

---

[1] Of the eight original annuities, five have terminated pursuant to the terms of the Will.

[2] These payments have now terminated. The beneficiaries, Augustus Trask Ashton, II, and Elizabeth Ashton, have long since completed their education.

Appellant serves as the sole trustee administering the Trust. The Will originally appointed as trustee Appellant's predecessor, the Land Title Bank and Trust Company ("Land Title"). Thereafter, by codicil, Settlor appointed Clement W. Bowen and the Land Title as co-trustees. Mr. Bowen passed away in 1971 and no successor co-trustee replaced him. Neither the Will nor the codicil required that the co-trustee be replaced.

The Settlor originally funded the Trust with $2,638,798.23 in assets. Over the years, the assets of the Trust have grown significantly. During the time period at issue in this appeal—November 18, 1983 to December 14, 2017—the assets appreciated in value from approximately $5,560,000 to approximately $73,000,000. **See** Fourth and Interim Account, at 3, RR. 91a. Petition for Adjudication, Rider to Item 14. Appellant also distributed to the beneficiaries approximately $29,000,000. Fourth and Interim Account, p.2, RR 90a.

In January 2018, Appellant filed the Fourth and Interim Account of its administration, documenting transactions that occurred between November 1983 and December 2017 ("Fourth Account"). Fourth and Interim Account, 1/3/18. In addition, Appellant filed a Petition for Adjudication requesting that the Orphan's Court authorize the Trustee to (1) divide Trust assets into two separate trusts, one dedicated to funding the annuity payments, including the fixed payment to Appellee, and the other to fund the University scholarships, and (2) pay Appellant retroactive commissions for its past administration of

the Trust and enter into a new fee agreement with Appellant that would increase Appellant's compensation. Petition for Adjudication, 1/3/18.

In April 2018, Appellee filed Objections to the Fourth Account and the Petition for Adjudication. Appellee alleged that, *inter alia*, (1) Appellant engaged in numerous transactions and disbursements that were wasteful, constituted self-dealing, and were otherwise improper, (2) any change to the commissions and fees payable to Appellant were improper, and (3) the proposed division of the Trust was improper. Appellee also sought the appointment of her daughter as a co-trustee to the Trust. **See** Objections, 4/2/18, at ¶¶ 53-72.[3]

In response, Appellant filed Preliminary Objections, arguing that Appellee has no legally cognizable interest in the outcome of her Objections and, therefore, no standing to litigate them. **See** Preliminary Objections, 4/23/18, at 4-6, 10.

The Orphans' Court overruled those Preliminary Objections at issue in this appeal. Orphans' Ct. Order, 7/9/18.[4] Noting Appellee's vested interest

---

[3] Appellee also filed a Petition to Modify the Trust, requesting that the Orphans' Court modify the language of the Trust to increase her fixed annuity from $2,400 to approximately $65,800. The Orphans' Court has not ruled on Appellee's request and thus, the petition is not before us. RR. 803a.

[4] Appellee raised several other claims, asserting (1) reporting failures by Appellant, (2) improper administration of the University scholarships, and (3) that Appellant had improperly accepted into the Trust the Settlor's membership interest in the Philadelphia Stock Exchange. The Orphans' Court sustained Appellant's preliminary objections to these claims. **See** Order. Appellee has not challenged these rulings.

in ongoing payments from the Trust, the Orphans' Court reasoned that her standing was "ordinary and automatic" because "vested trust beneficiaries inescapably have standing with respect to administration of a trust." Orphans' Ct. Op., 2/25/19, at 8.

Appellant requested that the Orphans' Court amend its interlocutory Order, pursuant to 42 Pa.C.S. § 702(b) and Pa.R.A.P. 1311, to permit an immediate appeal. The Orphans' Court denied Appellant's request. Orphans' Ct. Order, 8/14/18. Appellant filed a Petition for Review and the Superior Court granted leave to proceed. Order, No. 108 EDM 2018 (Pa. Super. filed 12/20/18).

Appellant raises the following issues for our review:

1. Whether Appellee has standing to challenge the transactions and disbursements set forth in the Fourth Account;

2. Whether Appellee has standing to request the appointment of a co-trustee;

3. Whether Appellee has standing to challenge Appellant's request for a retroactive and prospective fee and commission increase;

4. Whether Appellee has standing to challenge Appellant's request to divide the Trust into two trusts so that one trust would fund the annuity payments of Appellee and other beneficiaries and the other trust would fund the University scholarships.

Appellant's Br. at 3, 25, 37, 40, 43. [5]

---

[5] Pa.R.A.P. 2116(a) provides that Appellant shall state in the Statement of Questions Involved the questions that the Appellant is raising on appeal and the Superior Court may not consider an issue "unless it is stated in the statement of questions involved or is fairly suggested thereby." In the Statement of Questions Involved, Appellant and the Attorney General only

**General Principles Regarding Standing**

The threshold issue of standing presents a purely legal question. Thus, "our standard of review is *de novo*[,] and our scope of review is plenary." **In re Milton Hershey Sch.**, 911 A.2d 1258, 1261 (Pa. 2006) (citation omitted).

To obtain judicial resolution of a dispute, a party must demonstrate that he has standing to bring the action. **Fumo v. City of Philadelphia**, 972 A.2d 487, 496 (Pa. 2009); **Pittsburgh Palisades Park, LLC v. Commonwealth**, 888 A.2d 655, 659 (Pa. 2005). The core concept of standing is that a litigant may only challenge in court the action of another party when the litigant can establish that the other party's actions harmed the litigant. **In re: Milton Hershey School, supra** at 1261. The Pennsylvania Supreme Court has reasoned that "a person who is not adversely impacted by the matter that he or she is litigating does not enjoy standing to initiate the court's dispute resolution machinery." **Markam v. Wolf,** 136 A.3d 134, 140 (Pa. 2016). Thus, the threshold issue is whether the challenged conduct caused harm to the litigant.

---

included the first two questions listed above, but they briefed all four questions. Interestingly, Appellee included all four questions in its Counter-Statement of Questions Involved. Therefore, it appears that the failure to include all four questions, and thus, the four decisions of the Orphans' Court, was a clerical error. Since the failure to list all four questions appears to be a clerical error and the parties briefed all four issues, the failure of Appellant to include all four questions does not hamper our review and we will review all four decisions of the Orphans' Court.

Once the litigant establishes that the challenged conduct caused harm to the litigant, the litigant must then establish that the harm is "substantial, direct, and immediate." *In re: Milton Hershey School, supra*, at 1261-62 (citation omitted; emphasis added). The keystone to the "substantial, direct and immediate" test is that the litigant "must be negatively impacted in some real and direct fashion." *Pittsburgh Palisades, LLC v. Commonwealth of Pennsylvania*, 888 A.2d at 660 (citations omitted).

The Supreme Court has set forth elements that a litigant must meet in order to establish that the challenged conduct creates a "substantial, direct and immediate" harm to the litigant so that the litigant has a legally sufficient interest in the outcome of the litigation. A party establishes that a "direct" harm if he establishes "causation of the harm to his interest by the matter of which he complains." *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269, 282 (1975). In other words, a party must establish that the challenged conduct directly causes harm to him. *See Markam v. Wolf,* 136 A.3d at 140.

Similarly, a litigant establishes that the challenged conduct causes or will cause an "immediate" harm to the litigant if the causal connection between the challenged acts and the harm to the litigant is not remote or speculative. *Id.* Finally, a litigant has suffered a "substantial" harm from the challenged conduct if the litigant can establish that the challenged conduct caused a

discernible adverse effect to the litigant as opposed to the general public. *Milton Hershey School*, 911 A.2d at 1262.

Applying these principles, the Pennsylvania Supreme Court in *Pittsburgh Palisades* determined that petitioners lacked standing to challenge a provision of the Gaming Act because the Gaming Commission had not yet awarded a gaming license to the petitioners and thus, the Gaming Act did not harm petitioners in a manner that was "substantial, direct and immediate." 888 A.2d at 660-61. The Court reasoned that the provision of the Gaming Act that the petitioners challenged applied only to individuals or entities who had secured a gaming license and since petitioners did not hold a license, the petitioners could not establish that the Gaming Act directly harmed the petitioner and any potential harm was speculative and remote. *Id.*

In contrast, our Supreme Court in *S. Whitehall Twp. Police Serv. v. South Whitehall Township,* 555 A.2d 793 (Pa. 1989), found that the police union had standing to challenge a new policing policy because the new policy had a "substantial, direct and immediate" impact on the employment conditions of the members of the police union. In particular, the police chief implemented a policy requiring the police officers to issue a certain number of traffic tickets, parking citations, and traffic warnings each month and police officers had been sanctioned for failing to do so. The Court found that since the failure to follow the policy resulted in employment sanctions against the

police officers, the policy directly harmed the police officers. *Id.* at 796. The Court also concluded that the harm the police officers suffered was substantial because the adverse impact of the policy on the police officers was greater than the impact on the public. Finally, our Supreme Court concluded that the harm was immediate because the policy was, in essence, a quota policy, which is harmful to a police officer's discretionary functions. *Id*., at 796-97.

Applying these principles, we find that Appellee lacks standing to challenge the Fourth Account and the proposed fee arrangement between Appellant and the University as well as to request that the court appoint her daughter as a co-trustee. We also, find, however, that Appellee has standing to challenge the request to divide the Trust.

**Appellee Lacks Standing to Challenge the Fourth Account**

The Orphans' Court, when concluding that Appellee has standing to challenge the Fourth Account, does not focus on whether Appellant's alleged mismanagement caused Appellee harm that was "substantial, direct and immediate." Rather, without providing any legal authority, the Orphans' Court creates an exception to this well-enshrined principle and confers standing on Appellee solely on the basis of her status as a "current vested trust beneficiar[y]." Orphans' Ct. Op., 2/25/19, at 8. The Orphans' Court erred.

The proper analysis in this case may start with her status as a vested trust beneficiary, but it does not end there. It is first necessary to determine the rights that the Trust provides to Appellee. Then, the analysis turns to

whether the challenged conduct of Appellant has a "substantial, direct and immediate" adverse impact on the rights that the Trust provides to Appellee. Merely focusing on the name of the interest that a beneficiary to a trust holds, without considering whether the challenged conduct harms that interest,, is insufficient.

In this case, the relevant facts are undisputed. The Trust Agreement gives Appellee the right to receive the fixed amount of $2,400 annually and the Trust paid Appellee $2,400 every year. The challenged conduct involves mismanagement of transactions and disbursements that Appellant made during the time period of the Fourth Account. *See* Objections, 4/2/18, at ¶¶ 54-65. Thus, the issue is whether the alleged mismanagement harmed Appellee's right to receive $2,400 annually and will potentially harm her in the future.

Using these undisputed facts, we conclude that Appellee failed to establish that the challenged acts harmed her or will harm her in a manner that was or will be "substantial, immediate and direct." First, the challenged conduct, which allegedly reduced the value of the assets of the trust, did not directly harm Appellee because the Trust paid her $2,400 annually. Appellee's rights under the Trust are fixed at the right to receive $2,400 each year, and even if we accept the allegations about the challenged conduct as true—and the inference that if Appellant had not engaged in mismanagement, the trust

corpus would be higher—the challenged conduct did not directly harm Appellee because Appellant paid Appellee her fixed annuity each year.

Appellee cannot establish that the alleged mismanagement caused her an "immediate" harm because her assertion that the alleged mismanagement will cause her harm in the future is, at best, speculative and remote. During the time period that the Fourth Account covers, when the alleged mismanagement occurred, the value of the assets increased from approximately $5,560,000 to approximately $73,000,000. **See** Fourth and Interim Account, at 3, RR. 91a. Petition for Adjudication, Rider to Item 14. Appellant also distributed to the beneficiaries approximately $29,000,000. Fourth and Interim Account, at 2, RR 90a. Thus, Appellee's claim that the alleged mismanagement during this time period will harm the Trust's ability to pay her $2,400 annually in the future is at best, speculative and remote; even if Appellant engaged in mismanagement, there are still sufficient assets for the Trust to continue to pay Appellee $2,400 annually.[6] Additionally, the Trust must pay Appellee before making funds available for the University scholarships.

Finally, Appellee has the burden of establishing that the mismanagement caused her a "substantial' harm, *i.e.*, that the alleged mismanagement has a discernible adverse effect on Appellee's right to receive

---

[6] We note that the $2,400 payment is .0033% of the value of the assets of the Trust.

$2,400 annually, as opposed to an adverse effect on the public at large. Since Appellee cannot establish that the alleged mismanagement caused her any loss whatsoever or will cause any loss to her right to receive $2,400 in the future, she cannot establish the threshold element of this test—that the alleged misconduct had a discernible adverse effect on Appellee. Thus, Appellee cannot establish that the alleged mismanagement caused her a "substantial" harm.

We note that, in her Brief, Appellee cites the general test for establishing that the mismanagement caused her "substantial, direct and immediate" harm, but never applies the test to the facts of this case. Appellee's Br. at 17. Rather, Appellee merely argues that the Orphans' Court properly determined that Appellee has standing as a result of Appellee's status as a "current vested income beneficiary" of the Trust, and relies on *In re: Francis McGillick Foundation,* 642 A.2d 467 (Pa. 1994), to support this proposition. Appellee's Br., at 18-19. This case does not support Appellee's position that she has standing.

In *In re: Francis McGillick Foundation, supra*, the Supreme Court addressed whether an "incidental" beneficiary of a trust, the Roman Catholic Diocese of Pittsburgh ("Diocese"), had standing. 642 A. 2d at 467. The Supreme Court first defined the rights that the trust provided to the Diocese and found that the trust gave the Diocese the right to award scholarships that the trust funded and the prerogative to establish a vocational school. *Id.* The

Supreme Court then applied the "direct, immediate and substantial" test and concluded that the Diocese had standing. *Id.*, at 469-70.

In this case, Appellee is not an incidental beneficiary, but rather a named beneficiary.[7] Additionally, the Supreme Court's analysis to determine standing is the same as our analysis here. We define the rights that a trust provides a litigant and then determine whether the challenged conduct harms that right in a direct, immediate and substantial manner. As discussed above, Appellee has failed to meet that burden.

Additionally, Appellee erroneously relies upon the argument that a beneficiary has standing because a beneficiary has an equitable interest in the trust res. Appellee's Br., at 18. Once again, an equitable interest in the trust res does not translate into automatic standing regarding every action the trustee takes. Rather, the beneficiary may only challenge those actions of a trustee that adversely impact the beneficiary's rights to the trust in a "substantial, direct and immediate" manner.

---

[7] The Supreme Court has addressed whether a party has standing when the party is not a named beneficiary, but an incidental beneficiary and has a "special relationship" to the trust so that it has standing to enforce the provisions of the trust. *In re: Milton Hershey School*, *supra*; *In re: Francis Edward McGillick Foundation*, *supra*. In this case, Appellee is a named, and not an incidental, beneficiary and thus, there is no legal basis to address whether Appellee has a "special relationship" to the Trust. Additionally, the standing analysis is still the same. Once the court concludes that a party has a "special relationship," the court applies the "direct, immediate and substantial" test. Since Appellee cannot establish that she suffered or will suffer a "direct, immediate or substantial" harm, there is no legal basis to examine whether Appellee has a "special relationship."

In sum, there is no legal authority to support the conclusion of the Orphans' Court that a beneficiary with a vested interest in a trust automatically has standing to challenge the actions of a trustee. Rather, the beneficiary must establish that the challenged conduct of the trustee adversely impacted the beneficiary's rights in a Trust in a manner that was "substantial, direct and immediate" in order to establish standing to challenge the actions of the trustee. In this case, Appellee failed to establish that the trustee's alleged mismanagement during the time period of the Fourth Account harmed Appellee's right to receive $2,400 annually in a manner that is substantial, direct and immediate. Thus, Appellee lacks standing to challenge the Fourth Account.

**Appellee Lacks Standing to Seek the Appointment of Her Daughter as a Successor Co-Trustee for the Trust.**

The Will originally appointed Appellant's predecessor as Trustee. Thereafter, the Settlor executed a codicil and appointed Clement W. Bowen as a co-trustee. Mr. Bowen passed away in 1971. Both the Will and codicil are silent about the need to replace a co-Trustee. Thus, Appellant has been the sole trustee since 1971 and has paid Appellee her annuity each year.

Appellee, however, requested that the Orphans' Court appoint her daughter as co-trustee. Appellant objected on the basis of standing and the Orphans' Court found that Appellee, in fact, has standing to request that the Orphans' Court appoint her daughter to be the co-trustee.

- 14 -

The Orphans' Court, in addressing this issue, applied the "substantial, direct and immediate" test and concluded that Appellee has standing. Orphan's Court Opinion, at 10-11. Orphans' Court infers that because Appellee has alleged that Appellant engaged in mismanagement in the past, Appellant will engage in mismanagement in the future and Appellee must have standing to petition the court to appoint her daughter as co-trustee "due to the continued breaches that will likely occur if a co-trustee is not appointed." Orphan's Court Op. at 12. The Orphan's Court erred.

Since the appointment of a co-trustee will affect the future performance of the Trust, we must determine whether it is reasonable to infer from the undisputed facts that the failure to appoint a co-trustee will harm Appellee's right to receive $2,400 annually in the future. This analysis focuses primarily on whether the alleged mismanagement causes an "immediate" harm to Appellee.

As discussed, *supra,* Appellant paid Appellee $2,400 annually during the time period that she claims that Appellant engaged in mismanagement and while Appellant was the sole trustee. Also, during this time period, the value of the assets in the Trust appreciated in value from approximately $5,560,000 to approximately $73,000,000. **See** Fourth and Interim Account, p. 3, RR. 91a. Petition for Adjudication, Rider to Item 14. Appellant also distributed to the beneficiaries approximately $29,000,000. Fourth and Interim Account, at 2, RR 90a. Thus, given the growth in the assets during the period of

"mismanagement" and its current value of the assets of approximately $73,000,000, it is not reasonable to infer from these facts that Appellee's right to receive $2,400 annually will be adversely impacted by the alleged mismanagement. Rather, any such inference is, at best, speculative and remote. Thus, Appellee cannot establish that the alleged mismanagement will cause her "immediate" harm to her right to have the Trust pay her $2,400 in the future and she lacks standing to request that the Orphans' Court appoint her daughter to be a co-trustee.

Finally, we note that Appellee fails to present any legal authority to support her argument that her interest in the Trust will be adversely affected if Appellee cannot request that the Trust appoint her daughter as co-Trustee. Rather, Appellee merely argues that she has standing to request that the court appoint her daughter to be a successor trustee because if the court does not, "PNC's authority [will go] unchecked, and [lead] to numerous breaches of fiduciary duty. . ." Appellee's Br., at 31. Without allegations from which the Orphan's Court can reasonably infer that Appellee's future right to receive $2,400 will be harmed, Appellee has failed to establish that her allegations of mismanagement create an "immediate" harm to her right to receive $2,400 annually from the Trust.[8]

---

[8] Both Orphan's Court and Appellee base their legal analysis upon the assumption that Appellee is the only individual able to protect the Trust assets from mismanagement. This ignores the fact that the University as residual beneficiary and the Attorney General as *parens patriae* would have standing to challenge alleged mismanagement.

**Appellee Lacks Standing to Challenge the Proposed Fee Agreement between the University and Appellant.**

In the Fourth Account and Petition for Adjudication, Appellant requests that Orphans' Court approve a retroactive increase in Appellant's fees as well as a new fee agreement. Appellee objected to the increased fees as "excessive, unreasonable, unwarranted, improper, imprudent and inappropriate." Objections, No. 55.

Orphans' Court found that Appellee has standing to challenge the fee petition because Appellee's "primary interest in the Trust is financial." Opinion, at 13. Orphans' Court concluded that Appellee has a direct interest in challenging the fee petitions because the additional fees and commissions could deplete almost all of the assets of the Trust and thus, threaten the Trust's ability to pay her $2,400 annually:

> The additional fees and commissions proposed by Appellant could cause her harm to her interest by depleting the Trust. The value of the Trust could be reduced to almost nothing, and the fees of Trustee PNC could, at some juncture, threaten the payment of Reed's annuity. Just because her annuity is not currently threatened does not cause Reed to lose standing to object to increased payments to object to increased payments to the trustee."

Orphans' Court Op. at 13.

We find no support for the Orphans' Court analysis. Applying the appropriate test, we find that if the Orphans' Court grants Appellant's request for fees, Appellee's interest to receive $2,400 annually will not be harmed in a manner that is direct, substantial or immediate. As discussed above,

- 17 -

Appellee's interest in the Trust is the right to receive $2,400 annually and, as of December 14, 2017, the value of the assets in the Trust is approximately $73,000,000. The fee petition requests a retroactive payment of fees of approximately $1,095,000 and an increase in fee prospectively, which is based upon Appellant's applicable institutional fees, with a 33% discount. RR. 711a-722a, Rider to Item 14, Petition for Adjudication.

In light of the value of the assets in comparison to Appellee's right to receive $2,400 and the amount of the fee petition, the risk that the fees will deplete the assets of the Trust to the extent that the Trust will not have the funds to pay Appellee is, at best, speculative and remote. Consequently, Appellee cannot establish that the harm that she will suffer is "immediate." Since Appellee cannot establish one element of the "direct, immediate and substantial" test, we need not address the other elements.

We further note that the Orphans' Court bases its analysis upon the erroneous finding that unless Appellee has standing to challenge the fee petition, the fee request could result in "the value of the Trust [being] reduced to almost nothing." Opinion at 13. First, and most importantly, Orphans' Court assumes that unless Appellee has standing, the Orphans' Court will not exercise its authority to ensure that the fees paid to Appellant do not deplete the assets of the Trust. Second, Orphans' Court assumes that the University and Attorney General will sit idly by and not petition the court if Appellant

attempts to deplete the $73,000,000 through its fees. Thus, the harm to Appellee that Orphan's Court predicts is wholly unrealistic.

Therefore, Orphans' Court erred. Appellant cannot establish that the harm to her right to the $2,400 annuity is "substantial," let alone "direct and immediate," and she lacks standing to challenge the fee petitions.

**Appellee Has Standing to Contest the Division of the Trust.**

Appellant proposes to divide the trust into two trusts, Trust A and Trust B. Trust A "will be held for the benefit of the Annuitants and the Trustees of the University of Pennsylvania." Trust B "will be held for the benefit of the Trustees of the University of Pennsylvania and accordingly will be a solely charitable trust." Petition for Adjudication, Rider to Statement of Proposed Distribution, RR 712a. Appellant proposes to fund the Trust that would pay the annuitants with $5,000,000. Petition for Adjudication, Rider to Item 14, RR 39a.

As discussed above, Appellee's interest in the Trust is the right to receive $2,400 annually. Since the proposed division of the Trust involves transferring her interest in the Trust to a new trust and the amount of funding will directly impact Appellee's right to receive $2,400 in the future, Appellee has a direct interest in challenging the transfer of her interest to a new trust. Additionally, she has an "immediate interest" in the request to transfer her interest to a new trust because her right to receive $2,400 could be harmed if the new trust is not properly funded. Finally, her interest in the new trust and the

funding of the new trust is an interest that impacts her alone and not the general public.

Appellant argues that Appellee's right to receive $2,400 is protected because it is petitioning the court to fund the new trust with $5,000,000. However, the amount of funding goes to the merits of the division of the Trust and not to Appellee's standing to challenge the transfer of her right in the existing Trust to a new trust. Thus, Appellee has standing to challenge the division of the Trust to the extent the division impacts her right to receive $2,400 annually from the Trust.[9]

## Conclusion

Appellee lacks standing to challenge the Fourth Account and the request to increase Appellant's fees. Similarly, Appellee lacks standing to request that Orphans' Court appoint her daughter to be a co-trustee. Appellee, however, has standing to challenge the division of the Trust to the extent that the division of the Trust impacts her future right to receive $2,400 from the Trust.

Order reversed in part and affirmed in part. Case remanded. Jurisdiction relinquished.

President Judge Emeritus Bender joins the opinion.

Judge Colins files a dissenting statement.

---

[9] To the extent that the division of the Trust impacts other beneficiaries, parties or the Commonwealth of Pennsylvania, Appellee lacks standing to challenge their rights.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 6/3/2020*